*Reid v. Garland*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2022

Argued:  March 14, 2023
Decided: November 5, 2024

No. 20-3324

EVEROD RAY ANTHONY REID,

*Petitioner*,

*v.*

MERRICK B. GARLAND,
UNITED STATES ATTORNEY GENERAL,

*Respondent*.

On Petition for Review of an Order of
the Board of Immigration Appeals

Before:     Leval, Chin, and Pérez, *Circuit Judges*.

Everod Ray Anthony Reid petitions for review of a decision of the Board of Immigration Appeals ("BIA") affirming a decision of an Immigration Judge ("IJ"). The IJ ordered his removal to Jamaica and denied his applications for a waiver of inadmissibility under the former section 212(c) of the Immigration and Nationality Act, adjustment of status, and deferral of removal under the Convention Against Torture.  Pertinent to this appeal, the BIA affirmed the IJ's finding that the IJ herself had implemented adequate safeguards to address Reid's incompetency and

protect his rights and privileges.  Because the IJ improperly applied the framework for protecting the rights and privileges of noncitizens who may be incompetent, we **GRANT** Reid's petition for review, **VACATE** the BIA's decision, and **REMAND** for further proceedings consistent with this opinion.

ANDREW D.  BERGMAN, Arnold & Porter Kaye Scholer LLP, Houston, TX (Molly Lauterback, Sophie Dalsimer, Brooklyn Defender Services, Brooklyn, NY, *on the brief*), *for Petitioner Everod Ray Anthony Reid*.

PAUL FIORINO, Senior Litigation Counsel, Office of Immigration Litigation (Brian Boynton, Acting Assistant Attorney General, Carl H. McIntyre, Jr., Assistant Director, Office of Immigration Litigation, *on the brief*), Civil Division, U.S. Department of Justice, Washington, DC, *for Respondent Merrick B. Garland, United States Attorney General*.

John J.  Clarke, Jr., Subarkah Syafruddin, John O. Wray, DLA Piper LLP (US), New York, NY, *for Amici Curiae Former Immigration Judges and Former Members of the Board of Immigration Appeals, in support of Petitioner*.

John Harland Giammatteo, Staff Attorney and Justice Catalyst Fellow, Lutheran Social Services of New York, Immigration Legal Program, New York, NY, *for Amici Curiae The Bronx Defenders, Erie County Bar Association Volunteer Lawyers Project, Inc., Esperanza Immigrant Rights Project, Florence Immigrant & Refugee Rights Project, The Legal Aid Society, and Open Immigration Legal Services, in support of Petitioner*.

Allen Burton, O'Melveny & Myers LLP, New York, NY, Martha F. Hutton, O'Melveny & Myers LLP, Washington, DC, *for Amici Curiae Civil Rights Education and Enforcement Center, Disability Rights Advocates, Immigrant Defenders Law Center, and Pangea Legal Services, in support of Petitioner*.

MYRNA PÉREZ, *Circuit Judge*:

Everod Ray Anthony Reid petitions for review of a September 25, 2020 decision of the Board of Immigration Appeals ("BIA") affirming a February 3, 2020 decision of an Immigration Judge ("IJ") that denied Reid's applications for a waiver of inadmissibility under the former section 212(c) of the Immigration and Nationality Act ("INA"), Pub. L. No. 82-414, 66 Stat. 163 (1952) (codified as amended at 8 U.S.C. § 1101 *et seq.*), adjustment of status, and deferral of removal under the Convention Against Torture ("CAT"). The IJ found that Reid suffers from schizophrenia and presents psychotic symptoms, including delusional thinking, visual hallucinations, command auditory hallucinations, and paranoia. He is "bombarded" by voices, which provide instructions that he perceives as protective. Certified Admin. R. ("CAR") at 339, 348. According to the IJ's findings, Reid also suffers from persecutory delusions and paranoia, resulting in the belief that "all Court personnel"—including his counsel, opposing counsel, and the IJ— "are in cahoots with each other and ultimately conspiring against him." *Id.* at 1606. The IJ found that, due to his mental illness and symptoms, Reid was unable to meaningfully assist his attorney or establish an attorney-client relationship. Because of these limitations, Reid's attorneys now contend he is not competent to participate in immigration proceedings without significantly stronger safeguards to effectively protect his rights and privileges under the INA and the Fifth Amendment's Due Process Clause.

Pertinent to this appeal, the BIA affirmed the IJ's finding that the IJ herself had implemented adequate and appropriate safeguards to address Reid's limitations and protect his rights and privileges.

3

In this opinion, we interpret the BIA's decision in *Matter of M-A-M-*, 25 I. & N. Dec. 474 (B.I.A. 2011), the INA, and the Due Process Clause of the Fifth Amendment. In doing so, we hold that to protect the rights and privileges of noncitizens who may be incompetent, an IJ must: (1) make a finding as to whether the noncitizen is incompetent; and, if so, (2) generate a record of sufficient findings regarding the character, scope, and severity of the noncitizen's incompetency; (3) implement safeguards that address the character, scope, and severity of the noncitizen's incompetency; and (4) articulate how and why the safeguards adequately and appropriately protect the noncitizen's rights and privileges under the INA and the Due Process Clause.[1] These findings are interdependent and obligatory, and a reviewing court cannot affirm the ultimate adequacy and appropriateness of safeguards to protect the noncitizen's rights and privileges in the absence of sufficient findings at each step of the *Matter of M-A-M-* framework. We note that in cases of plausibly remediable incompetency, the range of safeguards IJs may consider includes halting the proceedings via administrative closure or termination without prejudice as to the government's right to reopen.

In this case, we determine that the IJ improperly applied the framework for protecting an incompetent noncitizen's rights and privileges for four reasons. *First*, the IJ failed to make a specific finding of competency—that is, the IJ did not actually decide whether Reid was or was not competent.[2] For the purposes of this

---

[1] This is our Court's first occasion to interpret *Matter of M-A-M-* and its progeny in a precedential opinion. However, in *K.O. v. Garland*, another panel of this Court applied a consistent framework in a nonprecedential summary order. 860 F. App'x 188 (2d Cir. 2021). There, too, the facts and circumstances of the noncitizen's incompetency were complex. *See id.* at 190 (noting that K.O. was diagnosed with post-traumatic stress disorder, anxiety, and depression). The panel remanded because the IJ failed to render "any competency finding" or "properly understand, and make a sufficient inquiry regarding, the scope of K.O.'s history of mental illness." *Id.*; *see also id.* (finding that an "informed competency determination" required IJ to "adequately explore the competency issue" and "inquir[e] about the nature and scope of [KO's mental] illness").

[2] In this context, the terminology of "competency" or "incompetency" derives from constitutional law and statute. *See, e.g.*, *Cooper v. Oklahoma*, 517 U.S. 348, 350 (1996) (discussing "competen[cy] to stand trial"); 8 U.S.C. § 1229a(b)(3) (invoking safeguards to protect rights and privileges of noncitizens whose "incompetency" renders presence at immigration proceedings impracticable). We use it to describe an individual's mental ability to participate in legal proceedings. *See*

4

opinion, given the IJ's findings, we will assume Reid was incompetent; however, on remand, the IJ shall make a clear and specific finding as to competency. *Second*, to the extent that the IJ did find Reid to be incompetent, she failed to generate a record of sufficient findings regarding the character, scope, and severity of any incompetency. Notwithstanding the complexity and gravity of Reid's limitations, the IJ made only an insufficient, "sort of a formal finding," and failed to articulate her reasoning for this determination. CAR at 383–84. *Third*, the IJ failed to articulate how and why the safeguards she implemented adequately and appropriately protected Reid's rights and privileges. Instead, the IJ provided only a conclusory justification that "[u]nder the[] circumstances" and given his limitations, Reid "was given a full and fair hearing and his due process rights were protected" by the IJ's "adequate" safeguards. Special App'x at 18. *Fourth*, a reasonable review of the record suggests the conclusion that the safeguards the IJ implemented plainly failed to address Reid's limitations. In turn, the BIA erred in affirming the IJ's decision.

We grant Reid's petition for review, vacate the BIA's decision, and remand for further proceedings consistent with this opinion. On remand, the agency shall apply the *Matter of M-A-M-* framework as we have interpreted it. If Reid is found not competent on remand, the agency shall identify safeguards to allow for a full and fair hearing that comports with the requirements of the INA and the Due Process Clause. If the agency finds, given the character, scope, and severity of this incompetency, that the safeguards adopted by the IJ were insufficient to achieve a full and fair hearing that comports with the requirements of the INA and the Due Process Clause, the agency is reminded that the full range of available safeguards includes temporarily halting the proceedings, in the hope of Reid's experiencing a remission or improvement of competency through treatment, via administrative closure or termination without prejudice to the government's right to reopen.

---

*Incompetent*, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/incompetent (last visited Dec. 9, 2023) (defining "incompetent" as "not legally qualified," among other things). We do not use the terminology colloquially or pejoratively.

# BACKGROUND

## I.        Prior Proceedings

The Government has sought, unsuccessfully, to remove Reid from the United States for nearly 30 years.[3]   In 1995, the former Immigration and Naturalization Service ("INS")[4] issued an Order to Show Cause charging Reid with removability on account of a conviction for an offense allegedly involving firearms and an aggravated felony.   In 1997, Reid applied for a waiver of inadmissibility under the former section 212 of the INA, which permitted removable noncitizens who had accrued seven years of lawful permanent residency and met certain other conditions to request discretionary relief from removal.[5]   Reid's removal proceedings then were temporarily paused while he served a term of imprisonment for a 2000 drug conviction.   Upon his release, Reid renewed his application for relief under the former section 212(c), but an IJ and the BIA deemed him ineligible for such relief on account of intervening legislation that modified section 212(c) eligibility conditions.   The United States Court of Appeals for the Third Circuit granted a petition for review and remanded Reid's case, finding that the legislation had no effect on Reid's removal proceedings, which

---

[3] Technically, Reid has been in "deportation proceedings" rather than "removal proceedings." That is because Reid's case predates the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009 (1996), which "realigned the vocabulary of immigration law, creating a new category of 'removal' proceedings that largely replaces what were formerly exclusion proceedings and deportation proceedings." *Evangelista v. Ashcroft*, 359 F.3d 145, 147 n.1 (2d Cir. 2004) (quoting Gerald L. Neuman, *Habeas Corpus, Executive Detention, and the Removal of Aliens*, 98 Colum. L. Rev. 961, 966 (1998)); *see also United States v. Pantin*, 155 F.3d 91, 92 (2d Cir. 1998) (per curiam) ("[The IIRIRA] did away with the previous legal distinction among deportation, removal, and exclusion proceedings."). Given the lack of legal distinction, we use the terminologies interchangeably.

[4] In 2003, the INS's functions were transferred to the newly formed Department of Homeland Security.

[5] Reid applied for section 212(c) relief in March 1997. Effective April 1, 1997, the IIRIRA "repealed § 212(c) altogether," *Peralta-Taveras v. Att'y Gen.*, 488 F.3d 580, 583 (2d Cir. 2007), but preserved the availability of section 212(c) review for noncitizens whose removal proceedings began prior to April 1, 1997, IIRIRA § 309(c), 110 Stat. at 3009-625.

were commenced prior to the enactments. *Reid v. Att'y Gen. of U.S.*, 177 F. App'x 216, 219 (3d Cir. 2006).

In 2007, the Department of Homeland Security ("DHS") charged Reid with an additional ground of removability based on his 2000 drug conviction. An IJ again found Reid ineligible for section 212(c) relief, but in 2011, the BIA remanded upon ruling that Reid's 2000 drug conviction did not render him ineligible. A new hearing before an IJ was scheduled for 2013 but then repeatedly adjourned until 2019. During that period, two attorneys withdrew from representing Reid, with one asserting that Reid "ha[d] been uncooperative . . . and it ha[d] become unreasonably difficult to carry out representation effectively," CAR at 602, and the other asserting that Reid had "lost contact," *id.* at 1764.[6]

## II.      Proceedings Before the IJ

### A.      The Motion to Terminate Proceedings

In 2019, an IJ scheduled an "*M-A-M-* hearing"[7] in response to concerns raised by Reid's current counsel about Reid's competency. *Id.* at 325. In advance of the hearing, Reid filed a motion to terminate removal proceedings or, in the alternative, to implement safeguards to protect his rights and privileges. Reid asserted that he was not competent to participate in immigration proceedings because his mental illness and symptoms prevented him from consulting with his

---

[6] During criminal proceedings in 1994, Reid advised a magistrate judge that "his religion prevent[s] him from hiring an attorney" and consented only to representation by stand-by counsel. CAR at 633–34; *see also id.* at 626. Subsequently, Reid declined representation altogether and proceeded pro se. Reid's mental illness and symptoms complicate the attribution of Reid's counsel's actions and arguments to Reid. Nevertheless, for ease of reading, we follow judicial convention of ascribing to parties the actions and arguments made on their behalf in legal proceedings.

[7] An *M-A-M-* hearing facilitates an IJ's determination of whether a noncitizen demonstrating "indicia of incompetency" is "sufficiently competent to proceed with the [removal] hearing without safeguards" to protect the noncitizen's rights and privileges under the INA and the Due Process Clause. *Matter of M-A-M-*, 25 I. & N. Dec. at 479–81; *see* 8 U.S.C. § 1229a(b)(3). The IJ's findings "assist[] in . . . identifying appropriate safeguards." *Matter of J-S-S-*, 26 I. & N. Dec. 679, 683–84 (B.I.A. 2015).

counsel or assisting in his own defense.[8]  Reid argued that "[d]ue to the severity of [his] condition, the appropriate remedy . . . is termination" of removal proceedings because no other remedy would "[a]dequately [s]afeguard" his rights.  *Id.* at 555.  But if the IJ elected not to terminate proceedings, Reid requested the implementation of safeguards to better attend to his rights and privileges.

### B.    The *M-A-M-* Hearing

At the *M-A-M-* hearing on September 10, 2019, Dr. Karen Cort, a licensed clinical psychologist, testified.  The IJ found Dr. Cort to be "generally credible." CAR at 249.  Dr. Cort had diagnosed Reid with schizophrenia.  She explained that Reid demonstrates delusional thinking and experiences command auditory hallucinations.  The hallucinations "essentially are voices that he hears . . . that . . . instruct him what to do," which he perceives as "protective" because they tell him "who and who not to trust."  *Id.* at 339.  "[B]ased upon these voices that are telling him . . . certain things about different people," Reid feels "very paranoid," "very guarded," and "very persecuted by others."  *Id.*  As a result, he "believe[s] that people are against him and are conspiring against him."  *Id.* at 339–40. Notwithstanding these persistent symptoms and behaviors, Reid had not been diagnosed with schizophrenia until Dr. Cort diagnosed him in 2019, at age forty-nine.[9]

Dr. Cort found that Reid is aware that others do not hear the voices he hears and that mental health professionals consider such voices to be a symptom of mental illness that is typically treated with therapy and medication.  Yet Dr. Cort

---

[8] *See supra* p. 16 (setting forth the test for competency).

[9] While Reid's formal diagnosis is recent, other evidence in the record suggests that Reid has been experiencing similar symptoms for decades.  Reid underwent a voluntary psychiatric evaluation in 2001.  During this voluntary evaluation, he reported hearing voices that instructed him to distrust everyone and encouraged him to protect himself by grabbing a knife and ascribed his own increased paranoia to a fear of deportation.  The psychiatrist conducting the voluntary evaluation prescribed anxiety medication, but Reid neither took the medication nor sought further treatment because he believed "medication controls you."  CAR at 1602.  Later, during a term of imprisonment, Reid was referred for mental health services, but he avoided treatment out of distrust for mental health professionals.  *Id*. at 1603.

also noted that Reid does not view his auditory hallucinations as a symptom of mental illness or even a problem, and that Reid believes he can manage his own symptoms through his diet and "refuse[s] to take [medication] because he feels [it] controls you, and people want to control him and he does not feel that he should be controlled." *Id.* at 348.

Dr. Cort testified that Reid had only a "superficial understanding" of the immigration proceedings against him. *Id.* at 340. Reid is "able to articulate the nature of . . . the allegations made against him" and "aware why [i]mmigration proceedings . . . [are] being held against him." *Id.* But while he is "able to identify the basic roles of the different Court personnel," the combination of his auditory hallucinations and delusional thinking "makes him feel like all of the Court personnel are conspiring against him." *Id.* He suffers from persecutory delusions, believing that the IJ "listen[s] to the DA"; counsel for DHS wants to "make sure [Reid] become[s] part of the system" because "[t]he more people in the system the better for him so he can become mayor, like the guy who betrayed Christ"; and his lawyer leads a "double life" and "left [Reid] in the dark." *Id.* at 1603–04. To Reid, all lawyers, including his own, are "[c]ourt pretenders" playing a "game," and "none are there for [him]." *Id.*; *see also id.* at 351 ("[Q.] And your belief upon talking to him is that he believes that currently the Judge, myself, and his attorney go out drinking together or [are] associated together? . . . [A.] Yes. . . . Conspiring against him."); *id.* at 341 (Dr. Cort testifying that Reid believed in a conspiracy that includes Reid's "current attorney and any attorney that has ever represented him"). In sum, "Reid emphatically believes that all [c]ourt personnel are in cahoots with each other and ultimately conspiring against him." *Id.* at 1606.

Reid will not cooperate with counsel on tasks as simple as collection of biographical information. He often is "very guarded" or nonresponsive; "if he feels like [his counsel] is conspiring against him, he won't share that information" based on his self-protective instinct. *Id.* at 341. Likewise, Reid's delusional thinking and paranoia "influence[] all aspects of his behavior and decision-making," rendering him unable "to articulate any kind of thoughts or feelings because he feels like he has to hold back." *Id.*; *see also id.* at 344 ("[Reid's auditory

9

hallucinations] influence how he reacts to . . . particular person[s] or what . . . decision he makes or the next action he makes, et cetera.").

According to Dr. Cort, without therapy, Reid will not "understand that he actually has a mental illness, the nature of it, and that he needs medication to treat it." *Id.* at 343–44. And without medication, Reid will continue to be "bombarded" by voices and unable to discuss them in any "rational fashion." *Id.* at 348. Absent treatment, "Mr. Reid will more than likely never be able to cooperate with his counsel to assist with his legal proceedings." *Id.* at 1607. According to Dr. Cort, it is "difficult . . . to say" whether Reid would be competent if he both participated in therapy and took medication. *Id.* at 348; *see also id.* at 348–49 ("That would be . . . the best chance for him to be competent.").

As stated above, the IJ found Dr. Cort to be "generally credible." DHS did not challenge Dr. Cort's qualifications or offer opposing expert or fact testimony.

At the end of the *M-A-M-* hearing, the IJ reserved "formal" decision and made no "clear finding" but suggested "there are appropriate safeguards" and expressed "certainly enough concern" that she "should be implementing [them] at this time." *Id.* at 363. The IJ stated that she likely would implement identical safeguards "whether [she] find[s] competency or not." *Id.*

### C.    The Competency "Finding"

The following month, the IJ orally issued "sort of a formal finding" that she was "concerned about [Reid's] competency as it pertains to the attorney-client relationship" but said she would "find[] ways to . . . work around that." *Id.* at 383. She reiterated that "the safeguards would be the same" regardless of her finding. *Id.* at 382. When asked whether she was finding Reid incompetent, the IJ responded, "I'm not going to make a formal finding[] as to overall competency because . . . I don't know that there needs to be [one]," but also acknowledged that "there's incompeten[cy] as it pertains to the client-attorney working relationship." *Id.* at 384; *see also id.* ("I mean, I don't know if there's an overall incompeten[cy], but I think that there—in terms of like how he interacts with you. I don't think he's—I don't think you have a competent—I don't know the right word."). The IJ

10

stated that Reid's counsel "can[not] establish an attorney-client relationship that [she] would need in order to fully present the case." *Id.* Beyond this statement about the attorney-client relationship, however, the IJ did not make any other explicit finding that Reid was incompetent. Nor did the IJ articulate how and why the safeguards she was considering could "work around" Reid's mental illness. *Id.* at 383.

### D.     The Individual Hearing

At Reid's individual hearing on November 22, 2019,[10] the IJ implemented safeguards by "rel[ying] on the objective evidence in the record," "not requir[ing] Reid] to testify for his relief applications," having Reid's counsel "present[] witnesses and affidavits on his behalf," purportedly "allowing [Reid] to be unshackled during the hearing," and "not wear[ing] her robe because of [Reid's] distrust of the judicial system." Special App'x at 18.[11]

Reid's social worker, Alexis Donovan, also testified orally. The IJ found Ms. Donovan to be "generally credible." CAR at 249. Ms. Donovan testified that Reid's attitude toward treatment of his schizophrenia was changing and that Reid "confirmed . . . that he's interested in seeking treatment upon release, if given the opportunity to do so." *Id.* at 420. Even so, Reid remained averse to treatment through medication. But Ms. Donovan testified that Reid's "understanding of his

---

[10] "Evidentiary hearings on contested matters are referred to as individual calendar hearings or merits hearings. Contested matters include challenges to removability and applications for relief." Exec. Off. of Immigr. Rev., U.S. Dep't of Just., Immigration Court Practice Manual § 4.16(a) (2023).

[11] The Attorney General argues that the IJ implemented a safeguard of "fully credit[ing] the testimony of Dr. Cort, Ms. Donovan, and the declarations of Reid's mother, his fiancée, and [Reid's] country conditions expert." Br. for Resp't at 24. But the IJ credited these witnesses' oral and written testimony because it was credible, not as a safeguard. *See* Special App'x at 17 ("Based on their responsiveness and consistency, the court finds the testimonies of Dr. Cort and Ms. Donovan to be generally credible. Additionally, it finds that the respondent's mother and fiancé[e] along with the purported country conditions expert . . . would testify credibly and consistently with their written statements.").

11

illness is expanding," and she could not "say that it will not continue to expand to the point that he will decide to . . . take medication one day." *Id.* at 431.

### E. The IJ Decision

In a decision issued on January 31, 2020, the IJ denied Reid's applications for section 212(c) relief, adjustment of status, and deferral of removal under the CAT and directed Reid's removal to Jamaica. The IJ acknowledged that, at his individual hearing, Reid "could not assist his representative" in his defense, but nonetheless concluded that "the court ensured his due process by implementing adequate safeguards." Special App'x at 18.

On the merits, the IJ found Reid ineligible for section 212(c) relief because he "failed to establish" a condition of eligibility "that he did not serve an aggregate [prison] term of more than five years as a result of one or more aggravated felonies." *Id.* at 19. "[G]iven [Reid's] mental health issues, the age of the convictions and lack of proper records," Reid could offer only that he had served between 1,608 and 1,835 days, the higher number being eleven days above the ineligibility threshold for section 212(c) relief.[12] *Id.* The IJ recognized due process concerns with her eligibility finding but found no prejudice because she alternatively resolved to deny Reid section 212(c) relief on discretionary grounds.

In denying Reid section 212(c) relief on discretionary grounds, the IJ determined that "[b]ased on [Reid's] serious and lengthy criminal record . . . , he needs to provide additional offsetting favorable evidence involving 'unusual' or 'outstanding' equities." *Id.* at 20 (citations omitted). The IJ then found that Reid had, in fact, "established the existence of unusual equities," which were "compound[ed by] . . . additional positive factors," but ultimately determined that "they d[id] not outweigh the extensive adverse factors in the record." *Id.* at 21.

---

[12] "[I]n light of the attorney-client issue" preventing Reid from assisting in his own defense on this factual issue, the IJ previously had held the record open pending resolution of a records request in the hope that it would contain "a printout . . . or some kind of calculation" that would resolve Reid's eligibility. CAR at 458. The records request provided an inconclusive history that supported only a potential range of Reid's time served.

Finally, the IJ denied deferral of removal under the CAT because Reid had established neither "that it is more likely than not he will be subjected to torture [by Jamaican authorities] . . . based on his status as a mentally ill and homeless deportee," *id.* at 22, nor "a specific intent on the part of the Jamaican authorities to inflict severe pain or suffering . . . for any harm to [meet the definition of] torture." *Id.* at 23.

### III.    Proceedings Before the BIA

The BIA affirmed the IJ's decision.  The BIA acknowledged that the IJ failed to make a sufficient competency determination but nevertheless concluded that the IJ implemented safeguards "sufficient to ensure that the respondent received a full and fair hearing" because "they were the safeguards requested by [Reid]" and he identified no other safeguards that the IJ "should have implemented but did not." *Id.* at 5.

On the merits, the BIA affirmed the IJ's denial of section 212(c) relief on discretionary grounds but not the IJ's ruling that Reid had failed to establish his statutory eligibility for such relief.  The BIA agreed that Reid's equities in favor of discretionary relief were "unusual" but concluded that they "do not offset the adverse factor of [his] lengthy and serious criminal history."  *Id.* at 6.  It then affirmed the IJ's denial of deferral of removal under the CAT.

Finally, the BIA denied a motion to remand in light of new evidence that Reid had started taking psychiatric medication.  The BIA concluded that Reid failed to demonstrate that this evidence was material or likely to change any determination by the IJ because Reid had only been taking the medication for a few days before the motion was filed.

### STANDARD OF REVIEW

Where, as here, the BIA affirms the IJ's decision but rejects or does not reach one of the IJ's alternative bases for denying relief, we review the IJ's decision as modified by the BIA. *Wei Sun v. Sessions*, 883 F.3d 23, 27 (2d Cir. 2018).  That is,

we do not review the alternative basis that the BIA did not adopt. *Xue Hong Yang v. U.S. Dep't of Just.*, 426 F.3d 520, 522 (2d Cir. 2005).

We review factual findings under the "substantial evidence" standard, "which requires that they be supported by 'reasonable, substantial and probative evidence in the record when considered as a whole.'" *Kone v. Holder*, 596 F.3d 141, 146 (2d Cir. 2010) (quoting *Iouri v. Ashcroft*, 487 F.3d 76, 81 (2d Cir. 2007)); *see Su Chun Hu v. Holder*, 579 F.3d 155, 158 (2d Cir. 2009) (per curiam).  Although we treat factual findings as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B), we do not "defer to unreasoned rulings, or those based on legal error, faulty analysis, or misreadings of the record," *Dong Gao v. BIA*, 482 F.3d 122, 127 (2d Cir. 2007) (quoting *Li Zu Guan v. INS*, 453 F.3d 129, 136 (2d Cir. 2006)).  "We review all questions of law, including the application of law to facts, *de novo*." *Ojo v. Garland*, 25 F.4th 152, 159 (2d Cir. 2022).  And "[w]hen the BIA or IJ has failed to apply the law correctly, 'we retain substantial authority to vacate BIA or IJ decisions and remand for reconsideration or rehearing.'" *Beskovic v. Gonzales*, 467 F.3d 223, 225 (2d Cir. 2006) (quoting *Ivanishvili v. U.S. Dep't of Just.*, 433 F.3d 332, 337 (2d Cir. 2006)); *see also Ojo*, 25 F.4th at 168 ("[An] agency's failure to follow its own precedent . . . requires remand . . . .").

## DISCUSSION

I.    **Constitutional and Statutory Rights of Incompetent Noncitizens in Removal Proceedings**

A noncitizen "is entitled to a full and fair removal hearing under both the [INA] and the Due Process Clause of the Fifth Amendment." *Matter of R-C-R-*, 28 I. & N. Dec. 74, 77 (B.I.A. 2020).  Under the Fifth Amendment, a noncitizen is "entitle[d] . . . to due process of law in deportation proceedings," *Reno v. Flores*, 507 U.S. 292, 306 (1993), which includes the right to a full and fair hearing, *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982).  Similarly, the INA guarantees noncitizens "a reasonable opportunity to examine the evidence against [them], to present evidence on [their] own behalf, and to cross-examine witnesses presented by the Government." 8 U.S.C. § 1229a(b)(4)(B).

14

While the BIA has drawn on general due process principles from criminal proceedings to develop its incompetency precedent, "[u]nlike in criminal proceedings, a lack of competency in civil immigration proceedings does not mean that the hearing cannot go forward; rather, procedural fairness is required." *Matter of M-A-M-*, 25 I. & N. Dec. at 479.  In that vein, the INA requires that "[i]f it is impracticable by reason of an alien's mental incompetency for the alien to be present at the proceeding, the Attorney General shall prescribe safeguards to protect the rights and privileges of the alien."  8 U.S.C. § 1229a(b)(3).  Though several regulations describe potential safeguards, *see, e.g.*, 8 C.F.R. §§ 103.8(c)(2)(ii), 1240.4, 1240.10(c) (2024), the INA and its implementing regulations do not specify how to determine competency or how proceedings may go forward against incompetent noncitizens who are able to appear in person, *see Calderon-Rodriguez v. Sessions*, 878 F.3d 1179, 1182 (9th Cir. 2018).  In *Matter of M-A-M-*, the BIA "filled in some of the gaps in the INA" by "[d]rawing on the general due process principles for assuring competence in criminal proceedings . . . as well as on INA-provided rights to be represented and present evidence."  *Id.*

**A.   *Matter of M-A-M-* and Its Progeny Establish a Rigorous Procedural Framework**

In *Matter of M-A-M-*, the BIA set forth a test for competency to "meet traditional standards of fundamental fairness in determining whether an alien is competent to participate in immigration proceedings," 25 I. & N. Dec. at 479, and "provide[d] a framework for analyzing cases in which issues of mental competency are raised."  *Id.* at 476.  The framework imposed "rigorous procedural requirements," *Mejia v. Sessions*, 868 F.3d 1118, 1122 (9th Cir. 2017), which the BIA supplemented in subsequent decisions, *see, e.g., Matter of E-S-I-*, 26 I. & N. Dec. 136 (B.I.A. 2013); *Matter of J-R-R-A-*, 26 I. & N. Dec. 609 (B.I.A. 2015); *Matter of J-S-S-*, 26 I. & N. Dec. 679; *Matter of M-J-K-*, 26 I. & N. Dec. 773 (B.I.A. 2016).

**1.   *The Test for Competency***

A respondent is competent to participate in immigration proceedings if he or she (1) "has a rational and factual understanding of the nature and object of the proceedings," (2) "can consult with the attorney or representative if there is one,"

15

and (3) "has a reasonable opportunity to examine and present evidence and cross-examine witnesses." *Matter of M-A-M-*, 25 I. & N. Dec. at 479.

## 2. The Framework for Assessing Competency and Protecting Incompetent Respondents' Rights and Privileges

A respondent is "presumed to be competent to participate in removal proceedings," and "[a]bsent indicia of mental incompetency," an IJ is not obligated to analyze the respondent's competency. *Id.* at 477; *see also id.* at 484 ("[I]f there are no indicia of incompetency in an alien's case, no further inquiry regarding competency is required."). However, "[i]f there are indicia of incompetency," the IJ "must make further inquiry to determine whether the alien is competent for purposes of immigration proceedings." *Id.* at 484.

The IJ "must weigh the results" of her inquiry and "determine, under the test for competency . . . , whether the respondent is sufficiently competent to proceed with the hearing without safeguards." *Id.* at 481. She "must also articulate that determination and . . . her reasoning." *Id.* "[N]either party bears a formal burden of proof in immigration proceedings to establish whether or not the respondent is mentally competent," but the IJ must make her determinations based upon a "preponderance of the evidence." *Matter of J-S-S-*, 26 I. & N. Dec. at 683.[13]

If the IJ determines that the respondent lacks sufficient competency to proceed in the absence of safeguards, she must "evaluate and apply appropriate safeguards" and, again, "articulate the rationale for . . . her decision." *Matter of M-A-M-*, 25 I. & N. Dec. at 484. "[R]emoval proceedings can continue despite a respondent's lack of competency, so long as safeguards are in place to ensure that the respondent's rights and privileges . . . are protected." *Matter of J-S-S-*, 26 I. & N. Dec. at 681; *see also Matter of M-A-M-*, 25 I. & N. Dec. at 477 ("[P]roceedings can

---

[13] The respondent, DHS, and the IJ should work "collaborative[ly] . . . to fully develop the record." *Matter of J-S-S-*, 26 I. & N. Dec. at 682. "DHS is obligated to provide the Immigration Judge with materials relevant to the respondent's mental competency that are in its possession." *Id.*

go forward, even where the alien is incompetent, *provided* the proceeding is conducted fairly." (emphasis added)).

The IJ has "discretion to determine which safeguards are appropriate under the circumstances of a particular case." *Matter of M-J-K-*, 26 I. & N. Dec. at 775–76. BIA precedent offers a number of potential safeguards, including, but not limited to:

- "apply[ing] the safeguard of legal representation" to "increase[] the likelihood of finding a means to proceed fairly," *id.* at 777;

- "participation of a guardian in the proceedings," *Matter of M-A-M-*, 25 I. & N. Dec. at 483;

- "identification and appearance of a family member or close friend who can assist the respondent and provide the court with information," *id.*;

- "refusal to accept an admission of removability from an unrepresented respondent," *id.*;

- "docketing or managing the case to facilitate the respondent's ability to obtain . . . medical treatment in an effort to restore competency," *id.*;

- "continuance of the case for good cause shown," *id.*;

- "closing the hearing to the public," *id.*;

- "waiving the respondent's appearance," *id.*;

- "re-serving the notice to appear" if "a competency issue . . . surface[s] after proceedings [a]re underway," *Matter of M-J-K-*, 26 I. & N. Dec. at 776; *see also Matter of E-S-I-*, 26 I. & N. Dec. at 144–45;

- "actively aiding in the development of the record, including the examination and cross-examination of witnesses," *Matter of M-A-M-*, 25 I. & N. Dec. at 483;

- "[]assess[ing] . . . factual findings" in light of "competency issues [that] relate to the respondent's ability to provide reliable testimony," *Matter of J-R-R-A-*, 26 I. & N. Dec. at 612;

17

- deeming satisfied certain "issues . . . involved in the adjudication of" a respondent's claims and "proceed[ing] to the other requirements for the relief sought," *id.* at 612 n.1;

- "reserving appeal rights for the respondent," *Matter of M-A-M-*, 25 I. & N. Dec. at 483;

- "pursu[ing] alternatives with the parties, such as administrative closure, while other options are explored, such as seeking treatment for the respondent," *id*; and

- "terminat[ing] the respondent's proceedings without prejudice" as to the government's right to reopen, *Matter of M-J-K-*, 26 I. & N. Dec. at 774. [14]

## B. Safeguards Must Address the Character, Scope, and Severity of a Respondent's Incompetency

We hold that an IJ must generate a record of sufficient findings regarding the character, scope, and severity of a noncitizen's incompetency; implement safeguards that address the noncitizen's incompetency; and articulate how and why the safeguards adequately and appropriately protect the incompetent noncitizen's rights and privileges.

### 1. An IJ Must Generate a Record of Sufficient Findings

An IJ's sufficient findings regarding a noncitizen's incompetency establish the parameters that safeguards must address. *See Matter of J-S-S-*, 26 I. & N. Dec. at 683–84 ("[A]n independent competency determination . . . assists in bringing

---

[14] "Administrative closure is 'a docket management tool that is used to temporarily pause removal proceedings.'" *Matter of Cruz-Valdez*, 28 I. & N. Dec. 326, 326 (A.G. 2021) (quoting *Matter of W-Y-U-*, 27 I. & N. Dec. 17, 18 (B.I.A. 2017)). "It does not terminate or dismiss the case, but rather 'remove[s] a case from an Immigration Judge's active calendar or from the Board's docket.'" *Id.* (alteration in original) (quoting *Matter of Avetisyan*, 25 I. & N. Dec. 688, 692 (B.I.A. 2012)); *see also Matter of Amico*, 19 I. & N. Dec. 652, 654 n.1 (B.I.A. 1988) ("The administrative closing of a case does not result in a final order. It is merely an administrative convenience which allows the removal of cases from the calendar in appropriate situations."). By contrast, termination of proceedings is a process established by regulation that requires DHS "to file another charging document to initiate new proceedings." *Matter of Avetisyan*, 25 I. & N. Dec. at 695.

competency issues to the fore and identifying appropriate safeguards . . . ."); *Matter of M-A-M-*, 25 I. & N. Dec. at 483 ("[T]o decide which . . . safeguards to utilize," an IJ must "consider the facts and circumstances of an alien's case . . . ."). The IJ then must tailor safeguards to the delineated character, scope, and severity of the noncitizen's incompetency. *See Matter of M-A-M-*, 25 I. & N. Dec. at 481–82 (requiring that IJs "determine which safeguards are appropriate, given the particular circumstances in a case before them"); *Matter of J-R-R-A-*, 26 I. & N. Dec. at 612 (concluding that incompetency and safeguards "need to be assessed on a case-by-case basis"); *Matter of M-J-K-*, 26 I. & N. Dec. at 776 (noting that an IJ's "ultimate determination of which safeguards to implement" requires analysis of "whether they are adequate to ensure the fairness of proceedings"). Finally, the IJ "must articulate . . . her reasoning for the decision" of "which . . . safeguards to utilize." *Matter of M-A-M-*, 25 I. & N. Dec. at 483; *see also Mejia*, 868 F.3d at 1122 (holding that an IJ must "articulate his assessment of Petitioner's competence and why these procedural safeguards were adequate"). Each step of this "rigorous procedural requirement" is interdependent and mandatory. *Mejia*, 868 F.3d at 1122.[15] Without sufficient findings and articulations at each step of the framework, we possess "insufficient [information] to permit meaningful [appellate] review." *Beskovic*, 467 F.3d at 227.

### 2. An IJ Must Implement and Articulate Safeguards That Adequately Address the Noncitizen's Incompetency

After making a finding as to the noncitizen's incompetency, an IJ must implement safeguards and articulate why those safeguards sufficiently address the character, scope, and nature of the identified incompetency. "To order the removal of someone unable to participate meaningfully in his or her removal

---

[15] *Matter of M-A-M-* prescribes mandatory steps, not elective ones: An IJ "*must* take measures to determine whether a respondent is competent to participate in proceedings"; "*must* weigh the results from the measures taken and determine, under the test for competency . . . , whether the respondent is sufficiently competent to proceed with the hearing without safeguards"; "*must* . . . articulate that determination and . . . her reasoning"; "*shall* prescribe safeguards to protect the rights and privileges of the alien"; "*will* consider the facts and circumstances of an alien's case to decide which . . . safeguards to utilize"; and "*must* articulate . . . her reasoning for the decision." 25 I. & N. Dec. at 480–81, 483 (emphases added) (citation and internal quotation marks omitted).

proceedings [without adequate safeguards] would make the whole process a charade." *Diop v. Lynch*, 807 F.3d 70, 76 n.1 (4th Cir. 2015). An IJ may exercise her discretion in fashioning relief, as "the ultimate determination of which safeguards to implement and whether they are adequate to ensure the fairness of proceedings is discretionary." *Matter of M-J-K*, 26 I. & N. Dec. at 776. "[R]emoval proceedings can continue despite a respondent's lack of competency, *so long as* safeguards are in place to ensure that the respondent's rights and privileges . . . are protected." (emphasis added)). *Matter of J-S-S-*, 26 I. & N. Dec. at 681.

In some situations, the agency may determine that the hearing process safeguards adopted by the IJ were "insufficient to ensure fairness in the proceedings." *Matter of M-J-K-*, 26 I. & N. Dec. at 774. When incompetency is expected to be fleeting, a continuance may be a safeguard that can appropriately protect the noncitizen's rights. *See Matter of M-A-M-*, 25 I. & N. Dec. at 481 ("Immigration Judges can continue proceedings to allow for further evaluation of competency or an assessment of changes in the respondent's condition."). When there is evidence that the incompetency might plausibly be ameliorated with future treatment, or a likelihood that the disadvantages of the person's incompetency might be lessened in the not-too-distant future by, for example, the arrival of a family member who could testify to facts that might be helpful to the noncitizen's case, delay through administrative closure or termination of proceedings without prejudice to await the expected event could be a desirable safeguard to be considered.[16] *Id.* at 483; *see also Matter of M-J-K-*, 26 I. & N. Dec. at

---

[16] Reid was detained through the pendency of the removal proceedings now on appeal—approximately two years—so we take the occasion to opine that an incompetent respondent's detention may be an important factor in fashioning relief. For many respondents, the practical difference between administrative closure and termination of proceedings will be slim, as both halt DHS's removal efforts without prejudice to DHS reinitiating or reopening proceedings. *Matter of Avetisyan*, 25 I. & N. Dec. at 695. But for detained respondents, administrative closure could result in indefinite and inescapable detention. *See Velasco Lopez v. Decker*, 978 F.3d 842, 852 (2d. Cir. 2020) ("Absent release on bond, detention lasts through the initial removal determination proceedings . . . and all inter-agency and federal court appeals, even where an individual has prevailed and the Government appeals."). In fashioning relief, IJs must avoid unconstitutional, Kafkaesque scenarios in which respondents' proceedings are administratively closed due to

773, 778 (directing IJ to consider whether "unexplored safeguards may allow the proceedings to move forward" and "evaluate whether [administrative closure] could serve a purpose in this unique context").

## II.    The IJ's Application of the *Matter of M-A-M-* Framework to Reid's Case

After recognizing indicia of Reid's incompetency, the IJ improperly applied the *Matter of M-A-M-* framework and failed to adequately protect Reid's rights and privileges. *First*, the IJ failed to make a specific finding as to whether Reid was incompetent. *Second*, although there was substantial evidence that Reid was incompetent, the IJ failed to make sufficient findings regarding the character, scope, and severity of Reid's incompetency. *Third*, the IJ implemented safeguards without articulating how and why they would adequately and appropriately protect Reid's rights and privileges. *Fourth*, it is unclear from the record whether additional safeguards to protect Reid's rights and privileges should have been considered. The BIA erred in affirming the IJ's decision.

### A.    The IJ Properly Recognized Indicia of Incompetency, But Failed to Make a Finding on the Question of Reid's Competency and to Render a Sufficient Analysis Articulating Her Reasoning

In Reid's case, the IJ properly recognized indicia of incompetency, triggering her obligation to "make further inquiry to determine whether [Reid] is competent for purposes of immigration proceedings." *Matter of M-A-M-*, 25 I. & N. Dec. at 484.[17] Thus, the presumption of competency was rebutted, and the IJ was required

---

incompetency but respondents remain detained for extensive periods of time pending recovery. "[N]oncitizens . . . cannot be detained indefinitely." *Id.* at 855 n.13. Administrative closure may be inappropriate relief for respondents likely to face prolonged detention following such closure. We note, however, that BIA precedent is quite clear that "Immigration Judges should be particularly reluctant to terminate proceedings where . . . the alien has a history of serious criminal conduct and may pose a danger to himself or others upon his release into the community." *Matter of M-J-K*, 26 I. & N. Dec. at 777 n.4.

[17] In Reid's case, the IJ recognized indicia of incompetency and scheduled a *Matter of M-A-M-* hearing after Reid's attorney affirmatively raised the issue. *See* CAR at 321–23. We note,

to "weigh the results from the measures taken" to assess Reid's competency, "determine, under the test for competency," whether Reid was "sufficiently competent to proceed with the hearing without safeguards," and "articulate that determination and [her] reasoning." *Id.* at 481.

The IJ did take proper measures in furtherance of determining whether Reid was competent to proceed with removal proceedings without safeguards. However, beyond the finding as to the attorney-client relationship, the IJ failed to render a determination and articulation of reasoning that complied with the requirements of *Matter of M-A-M-* and thus did not make findings regarding the character, scope, and severity of any incompetency. The Attorney General concedes that the IJ's competency determination was insufficient. And though the BIA acknowledged that the IJ failed to make a sufficient competency determination, it did not remand. The IJ stated that she was "not going to make a formal finding[] as to overall competency because . . . [she] d[id]n't know that there need[ed] to be [one]." CAR at 384. Instead, the IJ issued "sort of a formal finding" that she was "concerned about [Reid's] competency as it pertains to the attorney-client relationship," and expressed a belief that Reid's counsel "can[not] establish an attorney-client relationship that [she] would need in order to fully present the case," and suggested that she did not "think he's . . . competent," but "d[id not] know the right word." *Id.* at 383–84. That is, Reid "could not meaningfully assist his attorney." Special App'x at 15. These informal determinations sound in the second and third prongs of *Matter of M-A-M-*'s test for competency but lack an adequate "determin[ation] . . . whether the respondent is sufficiently competent to proceed with the hearing without safeguards" and an "articulat[ion of] that determination and [the IJ's] reasoning." 25 I. & N. Dec. at 481.

---

however, that the substantive obligations *Matter of M-A-M-* imposes extend beyond contexts where a counseled respondent's attorney affirmatively raises the issue of incompetency. *Matter of M-A-M-* notes that "[i]ndicia of incompetency include a wide variety of observations and evidence" and that "the Immigration Judge or the parties may observe certain behaviors by the respondent" or "the record may contain evidence of . . . incompetency" that should trigger further inquiry. 25 I & N. Dec. at 479.

22

Without a record of sufficient findings regarding the character, scope, and severity of any incompetency, we possess "insufficient [information] to permit meaningful [appellate] review" of the question of whether the safeguards the IJ implemented were adequate to protect Reid's rights and privileges. *Beskovic*, 467 F.3d at 227. That is, without specific findings as to the character, scope, and severity of the incompetency, we are unable to determine whether the safeguards adopted by the IJ were adequate.

### B. The IJ Failed to Articulate How the Implemented Safeguards Could Adequately Protect Reid's Rights

The IJ implemented safeguards without articulating why the safeguards complied with the requirements of *Matter of M-A-M-*. Notwithstanding the IJ's acknowledgment that she was required to "articulate the rationale for . . . her decision" of "which safeguards are appropriate given the particular circumstances," the IJ stated—with only conclusory justification—that "[u]nder the[] circumstances," Reid "was given a full and fair hearing" and that "his due process rights were protected" by the IJ's "adequate" safeguards. Special App'x at 18. Similarly, on de novo review, the BIA did not articulate how and why the IJ's safeguards addressed the character, scope, and severity of any incompetency. Instead, it concluded that they were "sufficient" because Reid had requested them and identified no other safeguards that the IJ "should have implemented but did not," *id.* at 5, notwithstanding that Reid had proposed them as inadequate alternatives to his primary request for termination of proceedings.[18]

Because safeguards must be tailored to Reid's limitations, the IJ's "ultimate determination of which safeguards to implement" required analysis of "whether they are adequate to ensure the fairness of proceedings." *Matter of M-J-K-*, 26 I. & N. Dec. at 776. Without an articulation of how and why the IJ's safeguards

---

[18] To be clear, it was not Reid's burden to establish his own incompetency or safeguard his own rights and privileges. *See Matter of J-S-S-*, 26 I. & N. Dec. at 683 ("To safeguard a respondent's rights and privileges in determining competency issues in immigration proceedings, we find it appropriate to apply the allocation of the burden of proof employed in Federal habeas proceedings, . . . [*i.e.,*] neither party bears a formal burden of proof . . . .").

addressed the character, scope, and severity of any incompetency,[19] we cannot affirm that Reid received a full and fair hearing, as guaranteed by the INA and the Due Process Clause. *See Beskovic*, 467 F.3d at 227.

### C. The Safeguards Themselves Were Inadequate to Protect Reid's Rights

In all events, a reasonable review of the record suggests the conclusion that the safeguards implemented were inadequate and that the IJ should have explored whether other safeguards that were not considered might have improved the fairness of the proceeding.

The IJ implemented five safeguards: (1) relying on objective evidence; (2) not requiring Reid to testify; (3) having Reid's counsel present witnesses and affidavits on Reid's behalf; (4) not wearing a judicial robe; and (5) unshackling one of Reid's hands.[20]

The first three safeguards each modified the manner in which proof was offered and interpreted, but they did not directly address how Reid's inability to form an attorney-client relationship or any competency issues more generally disadvantaged him in his defense. Indeed, the IJ seemed to indicate that she doubted the sufficiency of relying upon Reid's attorney:

> I just think there's . . . incompeten[cy] as it pertains to the client-attorney working relationship. . . . So I'm finding that he can't—you know, one of the safeguards generally is [that] you have an attorney, right? So in this case, I don't think that

---

[19] Indeed, the IJ would have implemented identical safeguards regardless of findings concerning Reid's competency.

[20] The IJ claimed she "allow[ed Reid] to be unshackled during the hearing," Special App'x at 18, but the record indicates otherwise, *see* CAR at 400 ("Mr. Reid, you . . . have access to your hand, right? . . . No? . . . Would we be able to do one arm? Okay. Great."). The record also indicates that Reid's right hand was freed so that he could sign documents, not as a safeguard to address his incompetency. *See id.* ("Are you right-handed or left-handed, Mr. Reid? . . . Right-handed. Okay. . . . Thank you so much. He's going to need to sign."); *id.* at 445–46 ("So what I'm going to ask you to do is just sign on the top, okay? Since you got your right hand.").

24

resolves the issue. . . . I don't think that you . . . can establish an attorney-client relationship that you would need in order to fully present the case.

CAR at 384. Despite her hesitations, the IJ then purported to protect Reid's rights and privileges by prescribing safeguards to be implemented primarily by the attorney with whom Reid could not establish a relationship without exploring further safeguards.

The IJ described her fourth and fifth safeguards as "accommodat[ions]" to address Reid's "distrust of the judicial system." Special App'x at 18. Reid is schizophrenic and suffers from psychotic symptoms, including delusional thinking, visual hallucinations, command auditory hallucinations, and paranoia. His limitations cannot be addressed by a wardrobe change and access to his right hand.

It is troubling and hard to understand why other measures that could have helped ameliorate the ways Reid's limitations disadvantaged him during the hearing were not discussed or implemented. For example, it appears that if Reid is indeed incompetent, his psychologist Dr. Cort and his social worker Alexis Donovan both alluded to the possibility of his continued treatment allowing him to recover some measure of competency and participate more fully in his deportation hearing. If that is true, a continuance or administrative closure to await his possible restoration to or improvement of competence might be a desirable safeguard. It is also possible that other safeguards would enable Reid's counsel to more definitively establish the number of days he was imprisoned. We do not know, however, what would be appropriate without a record of sufficient findings on whether Reid is incompetent and if so, what safeguards would address his limitations.

Reid's limitations are complex and severe and require a thoughtful, tailored approach to safeguarding. The IJ should have considered whether further safeguards would better protect Reid from the disadvantages of his incompetency.

25

## D. Reid Is Not Required to Demonstrate Prejudice

The Attorney General concedes that the IJ failed to make a sufficient determination of Reid's competency and offers no argument as to how the IJ's safeguards protected Reid's rights and privileges. Instead, the Attorney General asserts that Reid fails to establish "prejudice from the immigration judge's conduct of the hearing." Br. for Resp't at 2. This overstates Reid's burden.

Rather, "when a regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute, and the [agency] fails to adhere to it, the challenged deportation proceeding is invalid and a remand to the agency is required." *Waldron v. INS*, 17 F.3d 511, 518 (2d Cir. 1993). Where, as here, a respondent claims that an agency "has failed to adhere to its own regulations regarding [a fundamental right derived from the Constitution or a federal statute] in a deportation hearing," he is "not required to make a showing of prejudice before he is entitled to relief." *Montilla v. INS*, 926 F.2d 162, 169 (2d Cir. 1991). "[T]o warrant remand, all a petitioner need show is that 'the subject regulations were for the alien's benefit and that the [agency] failed to adhere to them.'" *Picca v. Mukasey*, 512 F.3d 75, 78–79 (2d Cir. 2008) (quoting *Montilla*, 926 F.2d at 169); *see also United States v. Fernandez-Antonia*, 278 F.3d 150, 157 (2d Cir. 2002) ("An alien is entitled to a new deportation hearing whenever he shows on direct appeal that 'a regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute, and the [agency] fails to adhere to it.' . . . No showing of prejudice to the alien is required." (quoting *Waldron*, 17 F.3d at 518)).

Even if such a showing was required, Reid *was* prejudiced, at least with respect to his claim for section 212(c) relief. "Prejudice is shown where 'defects in the deportation proceedings may well have resulted in a deportation that would not otherwise have occurred.'" *United States v. Copeland*, 376 F.3d 61, 73 (2d Cir. 2004) (quoting *Fernandez-Antonia*, 278 F.3d at 159). By all appearances, the denial of Reid's section 212(c) claim illustrates prejudice flowing from the IJ's failure to implement adequate safeguards.

*First*, the IJ found Reid ineligible for section 212(c) relief because he did not establish that the aggregate prison term he served for aggravated felonies was five

years or less. The IJ recognized that "*given [Reid's] mental health issues*, the age of the convictions[,] and lack of proper records," Reid could offer only that he had served between 1,608 and 1,835 days, the higher number being eleven days above the ineligibility threshold for section 212(c) relief. Special App'x at 19 (emphasis added). It is not difficult to envision how additional safeguards, such as the further participation of a friend or family member who could clarify the situation, requiring the agency to assist in soliciting information from prison authorities, or granting a continuance could allow Reid to reduce that calculation of time served below the threshold.[21]

*Second*, the IJ denied Reid's claim for section 212(c) relief on discretionary grounds. Again, the denial was by a thin margin. The IJ determined that "[b]ased on [Reid's] serious and lengthy criminal record . . . , he needs to provide additional offsetting favorable evidence involving 'unusual' or 'outstanding' equities." *Id.* at 20 (citations omitted). The IJ then found that Reid had, in fact, "established the existence of unusual equities," which were "compound[ed by] . . . additional positive factors," but ultimately deemed them "outweigh[ed]." *Id.* at 21. Thus,

---

[21] Counsel possibly could have obtained additional evidence if, for example, Reid had been able to locate his release papers or recall the details of his release from prison, such as the time of year when he was released, whether anyone picked him up, or the living arrangements he made after his release.

As one set of amici curiae that represent individuals with complex mental health needs in removal proceedings explains:

> The question of removability—and mounting a full defense to the charges alleged by the Department—will turn largely on counsel's ability to question his or her client about the client's family and relationships, investigate those relationships, and document information about the qualifying relative's time in the United States. But this information is beyond the reach of counsel if their client cannot participate in the removal defense, whether due to mental illness, congenital cognitive impairments, traumatic brain injury, or dementia.

Br. in Supp. of Pet'r by Amici Curiae Bronx Defenders et al. at 10 (citation omitted).

even a minor change in the proceedings may well have resulted in a different resolution of Reid's claim for section 212(c) relief.[22]

### E. On Remand, the Agency Shall Reevaluate Reid's Competency and Consider What Safeguards May Be Appropriate

We remand because we cannot affirm on this record that Reid received a full and fair hearing, as guaranteed by the INA and the Due Process Clause. In order to adequately protect Reid's rights, the agency shall reevaluate his competency on remand and determine what safeguards to apply.

Incompetency is not a "static" condition, and an IJ is under a continuing obligation to assess a respondent's competency. *Matter of M-A-M-*, 25 I. & N. Dec. at 480; *see also id.* ("'[Incompetency] varies in degree. It can vary over time. It interferes with an individual's functioning at different times in different ways.' As a result, . . . throughout the course of proceedings[, the IJ needs] to determine whether an alien's condition has deteriorated or, on the other hand, whether competency has been restored." (quoting *Indiana v. Edwards*, 554 U.S. 164, 175 (2008))). Although Dr. Cort expressed a belief that Reid likely never would be able to cooperate with his attorney, both she and Ms. Donovan acknowledged a possibility that Reid could regain competency. Dr. Cort asserted that it is "difficult . . . to say" whether Reid could become competent if he participated in therapy and

---

[22] In that context, *Montilla*'s reasoning for rejecting a prejudice requirement is particularly apt:

> Adopting the prejudice test requires judicial exploration of petitioners' arguments, and burdens a court with carefully balancing the positives and negatives reflected in petitioner's circumstances to decide whether in hindsight the positives might so outweigh the negatives as to succeed in altering the result reached by the [agency]. In contrast, upon concluding that the [agency] failed to follow its own regulations, if the matter is returned to the [agency] with instructions to comply with those regulations, then the determination whether a petitioner merits § 212(c) relief is properly left to the wisdom and expertise of the [agency] in the first instance.

926 F.2d at 169.

28

took medication, CAR at 348; *see also id.* at 348–49 ("That would be . . . the best chance for him to be competent."), but that "[w]ithout consistent mental health treatment," Reid "more than likely never" will regain competency under the *Matter of M-A-M-* test, *id.* at 1607. Dr. Cort expressed "some hope and promise" that her connection with Reid suggested the "possibility of [him] maybe being more amenable to treatment," *id.* at 349, and Ms. Donovan testified that Reid "now feel[s] that treatment or talking with somebody on a regular basis has helped him, and that he wants to continue," but he remains averse to taking medication, *id.* at 421; *but see id.* at 349 ("[W]ithout the medication, . . . he could never be [competent]."); *id.* at 348 (noting that Reid will continue to be "bombarded" by voices and unable to discuss them in "a more rational fashion" unless he takes medication).

Over four years have passed since Reid's *Matter of M-A-M-* hearing. Given this passage of time, and the fact that the record indicates Reid was prescribed a different medication shortly before his hearing, we cannot say that Reid is now competent or incompetent. Even if we could conclude that Reid is not competent, we could neither posit the character, scope, and severity of his incompetency nor determine what safeguards would best improve the fairness of the proceedings. *See Diop*, 807 F.3d at 76 ("While past mental history can certainly bear on competency, it is by no means dispositive."); *id.* ("[A] single snapshot of mental health concerns taken ten months earlier can hardly represent [his] state of mind when he arrived in immigration court."). Accordingly, on remand, the agency shall reevaluate Reid and make a determination as to his competency, and if the agency determines that he is not competent, it shall, in its discretion, consider fashioning safeguards that will protect his rights and privileges, articulating its reasoning for each determination. *See Matter of J-S-S-*, 26 I. & N. Dec. at 685 ("[M]ental competency is not a static condition. Therefore, . . . the Immigration Judge should reevaluate the respondent's competency on remand." (citation omitted)); *Matter of M-J-K-*, 26 I. & N. Dec. at 775 n.3 (directing IJ to "reassess the respondent's competency in light of any updated evidence" on remand); *cf. Matter of E-S-I-*, 26 I. & N. Dec. at 144 ("Mental competency is a variable condition. Thus, the longer the period of time that has elapsed . . . , the more difficult it becomes to gauge whether an individual was competent at the time . . . ." (citation

omitted)). The agency must make competency findings that are sufficiently specific to permit meaningful appellate review.

If Reid is not competent on remand, in order to comport with the requirements of the INA and the Due Process Clause, the agency shall consider the full range of available safeguards, which may include, in its discretion, administrative closure or termination of proceedings, either for a limited duration or without prejudice as to the government's right to reopen or reinitiate proceedings.[23]

If the agency finds on remand that Reid is competent, the agency must reevaluate the merits of his claims for relief. Because Reid was not afforded a full and fair hearing, removal proceedings against him were tainted on a threshold basis. We vacate and remand for proceedings consistent with this opinion without reaching Reid's arguments challenging the agency's denials of his claims for section 212(c) relief, adjustment of status, or protection under the CAT. The agency shall generate a new record and reevaluate the merits of Reid's claims for relief.

---

[23] On remand, there are no barriers to administrative closure or termination of proceedings. Prior Attorney General opinions holding that IJs lack inherent authority to administratively close or terminate proceedings have been recently overruled. *See Matter of Cruz-Valdez*, 28 I. & N. Dec. at 326 ("I . . . overrule Attorney General Sessions's opinion in *Matter of Castro-Tum*, which concluded that the immigration courts' use of the tool of administrative closure was not authorized." (citing *Matter of Castro-Tum*, 27 I. & N. Dec. 271 (A.G. 2018))); *see also Matter of Coronado Acevedo*, 28 I. & N. Dec. 648, 649–50 (A.G. 2022) ("Th[e] conclusion [in *Matter of S-O-G- & F-D-B-*, 27 I. & N. Dec. 462 (A.G. 2018), that IJs lack inherent authority to terminate proceedings] relied heavily upon Attorney General Sessions's prior opinion in *Matter of Castro-Tum* . . . . I have now determined that *S-O-G- & F-D-B-* should be overruled.").

We recently held in *Garcia v. Garland* that "[a]n agency has not abused its discretion when it relied on an agency interpretation—such as the BIA's reliance on *Matter of Castro-Tum*—that was valid and applicable at the time the agency rendered its decision." 64 F.4th 62, 69 (2d Cir. 2023). Here, the agency did not rely on *Matter of Castro-Tum* or *Matter of S-O-G- & F-D-B-* in denying Reid's motion to terminate proceedings. Rather, it denied the motion upon determining that adequate safeguards could protect Reid's rights and privileges. Thus, *Garcia* has no application here.

## CONCLUSION

For the foregoing reasons, we **GRANT** Reid's petition for review, **VACATE** the BIA's decision, and **REMAND** for further proceedings consistent with this opinion.