UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 14-2115**

_____

MADIAGNE DIOP,

                    Petitioner,

          v.

LORETTA E. LYNCH, Attorney General,

                    Respondent.

_____

On Petition for Review of an Order of the Board of Immigration
Appeals.

_____

Argued: October 28, 2015          Decided: December 2, 2015

_____

Before WILKINSON, KEENAN, and THACKER, Circuit Judges.

_____

Petition for review denied by published opinion. Judge
Wilkinson wrote the opinion, in which Judge Keenan and Judge
Thacker joined.

_____

**ARGUED:** Luis Carlos Diaz, LAW OFFICES OF JAY S. MARKS, LLC,
Silver Spring, Maryland, for Petitioner. Aaron David Nelson,
UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for
Respondent. **ON BRIEF:** Benjamin C. Mizer, Principal Deputy
Assistant Attorney General, Civil Division, Greg D. Mack, Senior
Litigation Counsel, Office of Immigration Litigation, UNITED
STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

WILKINSON, Circuit Judge:

Petitioner Madiagne Diop challenges here the decision by the immigration judge and Board of Immigration Appeals to deny him a continuance or administrative closure of his removal proceedings so he could receive a mental health evaluation. Because the immigration judge did not err procedurally or substantively in assessing Diop's mental competency, we deny the petition for review.

I.

A.

Diop is a native of Senegal. He was admitted to the United States as a temporary visitor under a B-2 visa on October 15, 1997 and granted entry only until April 14, 1998. Diop overstayed his six-month visa and has resided in the United States without legal immigration status for the past seventeen years. On January 14, 2012, Diop was arrested following a psychotic episode at his workplace, a Bed Bath & Beyond in Rockville, Maryland. He was indicted on eleven counts, including assault, sexual assault, and resisting arrest. Based on his behavior at the time of arrest, Diop was transferred from police custody to a hospital for a psychological evaluation. He was diagnosed with psychosis and prescribed antipsychotic medication before returning to police custody.

Diop eventually pled guilty to three counts of second-degree assault. He was sentenced to 120 days for each count. The court suspended all of his sentences and placed him on probation for three years. The Department of Homeland Security served Diop with a Notice to Appear on October 10, 2012. The Notice deemed Diop removable under 8 U.S.C. § 1227(a)(1)(B) as a nonimmigrant who remained in the United States longer than permitted in violation of the Immigration and Nationality Act.

B.

During his removal proceedings, Diop appeared before an immigration judge (IJ) in Baltimore, Maryland a total of five times between November 2012 and May 2013. At the November 28, 2012 hearing, the IJ indicated that the court would evaluate Diop's mental competency when it reconvened on December 13, 2012. The IJ questioned Diop at that hearing, leading to the following dialogue:

> **IJ**: And, Mr. Diop, I would like to just ask you a few questions. Your attorney said that she was about to communicate with you. Did you feel like you were able to have a meaningful conversation with her?
>
> **Diop**: I spoke to her on the phone.
>
> **IJ**: You did talk to her on the phone? Okay. All right, and are you having any trouble understanding me today?
>
> **Diop**: [Indiscernible]
>
> **IJ**: Okay. Do you have any history of mental health problems?
>
> **Diop**: No.

3

**IJ**: No? Okay. And do you understand why you are in these proceedings?

**Diop**: Not really.

**IJ**: Okay. Okay, what do you understand the purpose of these hearings that you've been brought to be?

**Diop**: Excuse me?

**IJ**: What do you understand the purpose of these hearings?

**Diop**: It's about immigration, right?

**IJ**: Yes, Okay, this is about immigration. And if you have anything that you . . . need to tell your attorney about your Immigration history or Immigration status, do you think you will be able to communicate with her and tell her what you need to tell her?

**Diop**: Sure.

**IJ**: Okay.

**Diop**: Sometimes it's hard. Where I'm at, I have to pay to use the phone and it costs like $20.

**IJ**: Okay. Okay, but other than that, once you can get her on the phone do you feel like you can communicate with her about your situation?

**Diop**: Yes.

J.A. 143-45. Based on this exchange, his counsel's representations, and the record as a whole, the IJ found Diop competent to participate in removal proceedings. At the next hearing on February 7, 2013, Diop admitted all factual allegations against him and conceded that he was removable. Diop's counsel requested another continuance so that she could ask for prosecutorial discretion. When asked whether Diop would seek other forms of relief, counsel responded, "at this time . . . all I'm seeing immediately is that he might be eligible for a

4

prosecutorial discretion." J.A. 155. The IJ granted the continuance.

On April 23, 2013, Diop moved to either administratively close or continue proceedings in order to await passage of an immigration reform bill in Congress. Diop argued that the law would grant him legal status despite his prior convictions. The IJ refused to continue the case pending legislation that "has not been enacted and likely would not be enacted in its current form." J.A. 124. She granted Diop voluntary departure, or in the alternative, ordered his removal.

Diop filed an appeal to the Board of Immigration Appeals (BIA) on June 6, 2013, arguing that the IJ should have administratively closed or continued the case in order to allow Diop to receive a psychological evaluation. To contest the IJ's finding of competency, Diop put forth mental health records from immediately after his arrest on January 14, 2012. Diop also posited that a mental health assessment would have given him the opportunity to advance, for the first time, a claim for withholding of removal on account of his mental incompetency.

The BIA found no clear error in the IJ's determination that Diop was competent to proceed. The Board noted that Diop testified to no prior history of mental health problems and had demonstrated his ability to communicate with counsel. The BIA discounted the assessment taken directly after Diop's psychotic

5

episode as merely a reflection of his mental state at that moment and relied instead on his more recent favorable mental health records. Diop's withholding claim was rejected because he had failed to raise it before the IJ. The BIA affirmed the order of removal, and this petition for review followed.

## II.

### A.

Petitioner challenges his removal order on a single basis: that the IJ should have continued or administratively closed the removal proceedings to allow Diop to receive a mental health evaluation. He claims that the IJ's refusal to do so violated due process. Respondents in removal proceedings are entitled to procedural due process. Reno v. Flores, 507 U.S. 292, 306 (1993). To establish a due process violation, the respondent must prove both "that the defect in the proceeding rendered it fundamentally unfair" and "that the defect prejudiced the outcome of the case." Anim v. Mukasey, 535 F.3d 243, 256 (4th Cir. 2008).

The IJ denied Diop an independent psychological evaluation because she deemed him competent to proceed. Competency has long been considered an issue of fact. See Thompson v. Keohane, 516 U.S. 99, 111 (1995). The IJ's factual finding of competency is reviewed under the substantial evidence standard and treated as conclusive unless the evidence presented "was such that any

6

reasonable adjudicator would have been compelled to conclude to the contrary." Haoua v. Gonzalez, 472 F.3d 227, 231 (4th Cir. 2007).

The BIA established in Matter of M-A-M the process for addressing mental competency in removal proceedings. 25 I&N Dec. 474 (BIA 2011). Inherent in this process is a high degree of flexibility and discretion for the fact-finder to tailor his approach to the case at hand. First, the IJ starts with a presumption of competence. Id. at 477 (citations omitted). If he finds no indicia of incompetency, the inquiry is at an end. Id. (citations omitted). The test for competency utilized by the BIA has three components: whether the respondent (1) "has a rational and factual understanding of the nature and object of the proceedings," (2) "can consult with the attorney or representative if there is one," and (3) "has a reasonable opportunity to examine and present evidence and cross-examine witnesses." Id. at 479. In applying this test, the IJ may draw on a "wide variety of observations and evidence," including his perception of the respondent's behavior and medical records or psychological assessments. Id.

Where there are indicia of incompetency, the IJ should "take measures to determine whether a respondent is competent to participate in proceedings." Id. at 480. Here, the Board notes, "the approach taken in any particular case will vary based on

7

the circumstances." Id. The Board offers some examples of measures the IJ could take, such as questioning the respondent about his state of mind and medical history or, if the matter remains in doubt, requesting a mental health evaluation. Id. at 480-81. In a recent decision, the BIA further clarified that neither party bears the burden of proof at this stage; rather, the IJ should determine by a preponderance of the evidence whether the respondent is competent. Matter of J-S-S, 26 I&N Dec. 679, 683 (BIA 2015); M-A-M, 25 I&N Dec. at 481.

B.

The upshot of the foregoing discussion should be clear. The BIA does not tie the fact-finder to a list where one unchecked item could invalidate an otherwise fair removal proceeding. The Board has avoided requiring IJ's to ask any particular question, request any particular evaluation, or adopt any particular safeguard. It opts instead for an adaptable case-by-case approach. By contrast, petitioner here is bent on contorting every "may" into "must," every issue of fact into a question of law, every illustrative guide into a binding directive.

Petitioner's position ignores the Supreme Court's language: competency "depends heavily on the trial court's appraisal of witness credibility and demeanor." Thompson, 516 U.S. at 111. In other words, competency is an issue that highlights the institutional constraints on appellate courts: "Face to face

8

with living witnesses the original trier of the facts holds a position of advantage from which appellate judges are excluded." Maggio v. Fulfold, 462 U.S. 111, 118 (1983) (citation omitted). In removal proceedings specifically, competency turns on a credibility determination: the IJ must decide whether someone is honestly failing to understand the proceedings or is instead putting on an act. E.g., Munoz-Monsalve v. Mukasey, 551 F.3d 1, 7 (1st Cir. 2008) (noting that "stumbl[es]" and "glitches" in respondent's exchange with the IJ "are more consistent with a prevaricating petitioner than with a mentally incompetent one"). Drawing that distinction requires the IJ to scrutinize facial expressions, eye contact, tone of voice, body language -- all those little details that a dry transcript cannot hope to capture.

Ultimately, assessing the competency of individuals subject to removal comes down to a balance between competing interests. On the one hand, for someone navigating an unfamiliar legal system while facing the daunting prospect of deportation, procedural due process is a much-needed protection. See Rusu v. United States Immigration & Naturalization Serv., 296 F.3d 316, 320-22 (4th Cir. 2002). To order the removal of someone unable to participate meaningfully in his or her removal proceedings

would make the whole process a charade.[1] On the other hand, requests for continuances and medical evaluations can quickly become a strategy of delay, delay, and more delay. Diop, for instance, appeared in front of the IJ five separate times and seized upon every conceivable basis to postpone his case. To string out the proceedings on flimsy grounds risks prolonging the stay of those who have no lawful basis for remaining in this country.

C.

There is no question that the IJ in this case struck the right balance by refusing Diop's request for a separate mental health evaluation. Petitioner's due process argument falters at the initial stage of the M-A-M analysis: there were no sufficient indicia of Diop's incompetency. "Mental competency is not a static condition"; what matters is respondent's mental state at the time of the removal proceedings. M-A-M, 25 I&N Dec. 474 at 480. The only evidence that even comes close to suggesting incompetency is the above-noted psychological

---

[1] In the removal context, for example, courts have required safeguards to ensure meaningful participation if such participation is in doubt. M-A-M, 25 I&N Dec. 474 at 481-83 (summarizing cases); accord 8 U.S.C. § 1229a(b)(3). Appropriate safeguards include having the IJ actively aid in developing the record or allowing a family member or guardian to assist the respondent. Id. at 483. Because Diop was properly deemed competent, however, the question of appropriate safeguards is not one we need address.

10

assessment of Diop taken mere days after his arrest. While past mental history can certainly bear on competency, it is by no means dispositive. See id. at 479. In this case, Diop denied any history of mental health troubles, while his counsel had "no reason to believe" that he suffered from "an ongoing medical problem." J.A. 137. In that context, a single snapshot of mental health concerns taken ten months earlier can hardly represent Diop's state of mind when he arrived in immigration court.

Diop tried to prove this very point. In arguing before the IJ for yet another continuance, he sought to portray his violent behavior as an aberrant and isolated psychotic outburst brought on by "lack of sleep." J.A. 179. The strategy at that time apparently was to demonstrate that his stable and non-violent nature warranted a continued stay in the United States. Diop submitted to the IJ mental health assessments conducted closer in time to the removal proceedings, all of which indicated he had been "cooperative with treatment," found "no psychiatric concerns" whatsoever, and recommended no further treatment or medication. J.A. 171-72. By Diop's own evidence then, he was competent by the time he appeared before the IJ. Petitioner is thus caught in a trap of his own design: he claimed a stable condition before the IJ to stall for more time and incompetency before the BIA to secure reversal of his removal order. We

cannot credit a strategy that uses competency as a delay tactic rather than a genuine defense.

Erring on the side of caution, the IJ nonetheless took appropriate measures to assess Diop's competency by holding a separate hearing and inquiring specifically about his mental health and ability to communicate with counsel. Her exchange with Diop provided ample basis for a finding of competency. Petitioner voiced no psychological concerns, understood that the proceedings related to his immigration status, and raised only one objection, which focused on the cost of making phone calls to his attorney.

The Supreme Court has cautioned against flyspecking the IJ's questions or quibbling with the quality of respondent's answers. In determining competency, fact-finders cannot look to "fixed or immutable signs which invariably indicate the need for further inquiry"; instead they have to rely on a "wide range of manifestations and subtle nuances." Drope v. Missouri, 420 U.S. 162, 180 (1975). The IJ did what she deemed necessary to ascertain Diop's competency in full compliance with M-A-M. This was not a case where the IJ sacrificed due process for expediency. Far from it. Diop received one continuance after another -- to prepare his case, to consult with counsel, to request prosecutorial discretion, to receive a hearing on his mental competency. There being no defect in these proceedings,

12

we need not reach the question of prejudice.[2] The petition for review is hereby denied.

PETITION FOR REVIEW DENIED

---

[2] We also decline to consider petitioner's argument regarding withholding of removal. The BIA found that Diop failed to raise his withholding claim before the IJ and failed to submit the relevant application for relief or show prima facie eligibility for relief in his appeal to the BIA. The Board did not err in refusing to remand the case to permit him to apply for withholding.