*Reid v. Bondi*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2022

Argued:  March 14, 2023
Decided: November 5, 2024
Amended: March 14, 2025

No. 20-3324

.

EVEROD RAY ANTHONY REID,

*Petitioner*,

*v.*

PAMELA BONDI,
UNITED STATES ATTORNEY GENERAL,

*Respondent*.

On Petition for Review of an Order of
the Board of Immigration Appeals

Before:      Leval, Chin, and Pérez, *Circuit Judges*.

Everod Ray Anthony Reid petitions for review of a decision of the Board of Immigration Appeals ("BIA") affirming a decision of an Immigration Judge ("IJ"). The IJ ordered his removal to Jamaica, and denied his applications for a waiver of inadmissibility under the former section 212(c) of the Immigration and Nationality Act ("INA"), for adjustment of status, and for deferral of removal under the Convention Against Torture.  Pertinent to this appeal, the BIA affirmed the IJ's

finding that the IJ herself had implemented adequate safeguards to address Reid's incompetency and protect his rights and privileges. Because the IJ failed to explain why the safeguards implemented were adequate in light of the character, scope, and severity of Reid's disabilities, as implicitly required by the INA, we are unable to review the question of their adequacy. We therefore **GRANT** Reid's petition for review, **VACATE** the BIA's decision, and **REMAND** for further proceedings consistent with this opinion.

ANDREW D. BERGMAN, Arnold & Porter Kaye Scholer LLP, Houston, TX (Molly Lauterback, Sophie Dalsimer, Brooklyn Defender Services, Brooklyn, NY, *on the briefs*), *for Petitioner Everod Ray Anthony Reid*.

PAUL FIORINO, Senior Litigation Counsel, Office of Immigration Litigation (Brian Boynton, Acting Assistant Attorney General, Carl H. McIntyre, Jr., Assistant Director, Office of Immigration Litigation, *on the brief*), Civil Division, U.S. Department of Justice, Washington, DC, *for Respondent Pamela Bondi, United States Attorney General*.

John J. Clarke, Jr., Subarkah Syafruddin, John O. Wray, DLA Piper LLP (US), New York, NY, *for Amici Curiae Former Immigration Judges and Former Members of the Board of Immigration Appeals, in support of Petitioner*.

John Harland Giammatteo, Staff Attorney and Justice Catalyst Fellow, Lutheran Social Services of New York, Immigration Legal Program, New York, NY, *for Amici Curiae The Bronx Defenders, Erie County Bar Association Volunteer Lawyers Project, Inc., Esperanza Immigrant Rights Project, Florence Immigrant &*

*Refugee Rights Project, The Legal Aid Society, and Open Immigration Legal Services, in support of Petitioner.*

Allen Burton, O'Melveny & Myers LLP, New York, NY, Martha F. Hutton, O'Melveny & Myers LLP, Washington, DC, *for Amici Curiae Civil Rights Education and Enforcement Center, Disability Rights Advocates, Immigrant Defenders Law Center, and Pangea Legal Services, in support of Petitioner.*

MYRNA PÉREZ, *Circuit Judge*:

Everod Ray Anthony Reid petitions for review of a September 25, 2020 decision of the Board of Immigration Appeals ("BIA") affirming a February 3, 2020 decision of an Immigration Judge ("IJ") ordering Reid's removal and denying his applications for a waiver of inadmissibility under the former section 212(c) of the Immigration and Nationality Act ("INA"), Pub. L. No. 82-414, 66 Stat. 163 (1952) (codified as amended at 8 U.S.C. § 1101 *et seq.*), adjustment of status, and deferral of removal under the Convention Against Torture ("CAT"). At the proceeding before the IJ, Reid asserted that he was incompetent to proceed without safeguards guaranteed by the INA. The IJ found that Reid suffers from schizophrenia and presents psychotic symptoms, including delusional thinking, visual hallucinations, command auditory hallucinations, and paranoia. He is "bombarded" by voices, which provide instructions that he perceives as protective. Certified Admin. R. ("CAR") at 339, 348. According to the IJ's findings, Reid also suffers from persecutory delusions and paranoia, resulting in the belief that "all Court personnel"—including his counsel, opposing counsel, and the IJ— "are in cahoots with each other and ultimately conspiring against him." *Id.* at 1606. The IJ found it unclear whether those disabilities rendered Reid incompetent to proceed, which would entitle him under the INA to the implementation of safeguards. Instead of reaching a conclusion as to whether he was incompetent, the IJ implemented certain safeguards to assist Reid in the event that his disabilities qualified as incompetency. *See* Special App'x at 18. The IJ stated,

3

"[a]lthough the respondent could not assist his representative, the court ensured his due process by implementing adequate safeguards." *Id.* The IJ gave no explanation as to why these safeguards were adequate. And the IJ did not consider the character, scope, and severity of Reid's disabilities that the IJ assumed might amount to incompetency to proceed under the INA. The BIA affirmed, and Reid brought this petition.

In this opinion, we apply the BIA's decision in *Matter of M-A-M-*, 25 I. & N. Dec. 474 (B.I.A. 2011), the INA, and the Due Process Clause of the Fifth Amendment. In directing the Attorney General to "prescribe safeguards" and in providing for judicial review, Congress has implicitly required that when an IJ implements safeguards to protect the rights of a noncitizen in removal proceedings because the person is incompetent to proceed without safeguards— or because, as here, the person suffers from disabilities that the IJ assumed might constitute such incompetency—the IJ must explain the adequacy of the safeguards implemented with reference to the character, scope, and severity of the incompetency. Without such explanation, a reviewing court is incapable of assessing whether the implemented safeguards were adequate to protect the person's rights.

## BACKGROUND

### I. Prior Proceedings

For nearly 30 years, the Government has sought, unsuccessfully, to remove Reid from the United States.[1] In 1995, the former Immigration and Naturalization

---

[1] Technically, Reid has been in "deportation proceedings" rather than "removal proceedings." That is because Reid's case predates the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009, which "realigned the vocabulary of immigration law, creating a new category of 'removal' proceedings that largely replaces what were formerly exclusion proceedings and deportation proceedings." *Evangelista v. Ashcroft*, 359 F.3d 145, 147 n.1 (2d Cir. 2004) (quoting Gerald L. Neuman, *Habeas Corpus, Executive Detention, and the Removal of Aliens*, 98 Colum. L. Rev. 961, 966 (1998)); *see also United States v. Pantin*, 155 F.3d 91, 92 (2d Cir. 1998) (per curiam) ("[The IIRIRA] did away with the previous legal distinction among deportation, removal, and exclusion proceedings."). Given the lack of legal distinction, we use the terminologies interchangeably.

Service ("INS")[2] issued an Order to Show Cause charging Reid with removability on account of a conviction for an offense allegedly involving firearms and an aggravated felony. In 1997, Reid applied for a waiver of inadmissibility under the former section 212 of the INA, which permitted removable noncitizens who had accrued seven years of lawful permanent residency and met certain other conditions to request discretionary relief from removal.[3] Reid's removal proceedings were then temporarily paused while he served a term of imprisonment for a 2000 drug conviction. Upon his release, Reid renewed his application for relief under the former section 212(c), but an IJ and the BIA deemed him ineligible for such relief on account of intervening legislation that modified section 212(c) eligibility conditions. The United States Court of Appeals for the Third Circuit granted a petition for review and remanded Reid's case, finding that the legislation had no effect on Reid's removal proceedings, which were commenced prior to the enactments. *Reid v. Att'y Gen. of U.S.*, 177 F. App'x 216, 219 (3d Cir. 2006).

In 2007, the Department of Homeland Security ("DHS") charged Reid with an additional ground of removability based on his 2000 drug conviction. An IJ again found Reid ineligible for section 212(c) relief, but in 2011, the BIA remanded upon ruling that Reid's 2000 drug conviction did not render him ineligible. A new hearing before an IJ was scheduled for 2013 but then repeatedly adjourned until 2019. During that period, two attorneys withdrew from representing Reid, with one asserting that Reid "ha[d] been uncooperative . . . and it ha[d] become unreasonably difficult to carry out representation effectively," CAR at 602, and the other asserting that Reid had "lost contact," *id.* at 1764.[4]

---

[2] In 2003, the INS's functions were transferred to the newly formed Department of Homeland Security.

[3] Reid applied for section 212(c) relief in March 1997. Effective April 1, 1997, the IIRIRA "repealed § 212(c) altogether," *Peralta-Taveras v. Att'y Gen.*, 488 F.3d 580, 583 (2d Cir. 2007), but preserved the availability of section 212(c) review for noncitizens whose removal proceedings began prior to April 1, 1997, IIRIRA § 309(c), 110 Stat. at 3009-625.

[4] During criminal proceedings in 1994, Reid advised a magistrate judge that "his religion prevents him from hiring an attorney" and consented only to representation by stand-by counsel. CAR at

## II.    Proceedings Before the IJ

### A.    The Motion to Terminate Proceedings

In 2019, an IJ scheduled an "*M-A-M-* hearing"[5] in response to concerns raised by Reid's current counsel about Reid's competency.  *Id.* at 325.  In advance of the hearing, Reid filed a motion to terminate removal proceedings or, in the alternative, to implement safeguards to protect his rights and privileges.  Reid asserted that he was not competent to participate in immigration proceedings because his mental illness and symptoms prevented him from consulting with his counsel or assisting in his own defense.[6]  Reid argued that "[d]ue to the severity of [his] condition, the appropriate remedy . . . is termination" of removal proceedings because no other remedy would "[a]dequately [s]afeguard" his rights.  *Id.* at 555.  But if the IJ elected not to terminate proceedings, Reid requested the implementation of safeguards to better attend to his rights and privileges.

### B.    The *M-A-M-* Hearing

At the *M-A-M-* hearing on September 10, 2019, Dr. Karen Cort, a licensed clinical psychologist, testified.  Dr. Cort had diagnosed Reid with schizophrenia.  She explained that Reid demonstrates delusional thinking and experiences command auditory hallucinations.  The hallucinations "essentially are voices that he hears . . . that . . . instruct him what to do," which he perceives as "protective" because they tell him "who and who not to trust."  *Id*. at 339.  "[B]ased upon these voices that are telling him . . . certain things about different people," Reid feels

---

633–34; *see also id.* at 626.  Subsequently, Reid declined representation altogether and proceeded pro se.  Reid's mental illness and symptoms complicate the attribution of Reid's counsel's actions and arguments to Reid.  Nevertheless, for ease of reading, we follow the judicial convention of ascribing to parties the actions and arguments made on their behalf in legal proceedings.

[5] An *M-A-M-* hearing facilitates an IJ's determination of whether a noncitizen demonstrating "indicia of incompetency" is "sufficiently competent to proceed with the [removal] hearing without safeguards" to protect the noncitizen's rights and privileges under the INA and the Due Process Clause.  *Matter of M-A-M-*, 25 I. & N. Dec. at 479–81; *see* 8 U.S.C. § 1229a(b)(3).  The IJ's findings "assist[] in . . . identifying appropriate safeguards."  *Matter of J-S-S-*, 26 I. & N. Dec. 679, 683–84 (B.I.A. 2015).

[6] *See infra* p. 14–17 (describing the test for competency set forth in *Matter of M-A-M-*).

"very paranoid," "very guarded," and "very persecuted by others." *Id.* As a result, he "believe[s] that people are against him and are conspiring against him." *Id.* at 339–40. Notwithstanding these persistent symptoms and behaviors, Reid had not been diagnosed with schizophrenia until Dr. Cort diagnosed him in 2019, at age forty-nine.[7]

Dr. Cort found that Reid is aware that others do not hear the voices he hears and that mental health professionals consider such voices to be a symptom of mental illness that is typically treated with therapy and medication. Yet Dr. Cort also noted that Reid does not view his auditory hallucinations as a symptom of mental illness or even a problem. *Id.* at 348. Rather, Reid believes he can manage his own symptoms through his diet and "refuse[s] to take [medication] because he feels [it] controls you, and people want to control him and he does not feel that he should be controlled." *Id.*

Dr. Cort testified that Reid had only a "superficial understanding" of the immigration proceedings against him. *Id.* at 340. According to Dr. Cort, Reid is "able to articulate the nature of . . . the allegations made against him" and "aware why [i]mmigration proceedings . . . [are] being held against him." *Id.* But while he is "able to identify the basic roles of the different Court personnel," the combination of his auditory hallucinations and delusional thinking "makes him feel like all of the Court personnel are conspiring against him." *Id.* He suffers from persecutory delusions, believing that the IJ "listen[s] to the DA"; counsel for DHS wants to "make sure [Reid] become[s] part of the system" because "[t]he more people in the system the better for him so he can become mayor, like the guy who betrayed Christ"; and his lawyer leads a "double life" and "left [Reid] in the dark."

---

[7] While Reid's formal diagnosis is recent, other evidence in the record suggests that Reid has been experiencing similar symptoms for decades. Reid underwent a voluntary psychiatric evaluation in 2001. During this voluntary evaluation, he reported hearing voices that instructed him to distrust everyone and encouraged him to protect himself by grabbing a knife and ascribed his own increased paranoia to a fear of deportation. The psychiatrist conducting the voluntary evaluation prescribed anxiety medication, but Reid neither took the medication nor sought further treatment because he believed "medication controls you." CAR at 1602. Later, during a term of imprisonment, Reid was referred for mental health services, but he avoided treatment out of distrust for mental health professionals. *Id*. at 1603.

*Id.* at 1603–04. To Reid, all lawyers, including his own, are "[c]ourt pretenders" playing a "game," and "none are there for [him]." *Id.*; *see also id.* at 351 ("[Q.] And your belief upon talking to him is that he believes that currently the Judge, myself, and his attorney go out drinking together or [are] associated together? . . . [A.] Yes. . . . Conspiring against him."); *id.* at 341 (Dr. Cort testifying that Reid believed in a conspiracy that includes Reid's "current attorney and any attorney that has ever represented him"). In sum, "Reid emphatically believes that all [c]ourt personnel are in cahoots with each other and ultimately conspiring against him." *Id.* at 1606.

Reid will not cooperate with counsel on tasks as simple as collection of biographical information. He often is "very guarded" or nonresponsive; "if he feels like [his counsel] is conspiring against him, he won't share that information" based on his self-protective instinct. *Id.* at 341. Likewise, Reid's delusional thinking and paranoia "influence[] all aspects of his behavior and decision-making," rendering him unable "to articulate any kind of thoughts or feelings because he feels like he has to hold back." *Id.*; *see also id.* at 344 ("[Reid's auditory hallucinations] influence how he reacts to . . . particular person[s] or what . . . decision he makes or the next action he makes, et cetera.").

According to Dr. Cort, without therapy, Reid will not "understand that he actually has a mental illness, the nature of it, and that he needs medication to treat it." *Id.* at 343–44. And without medication, Reid will continue to be "bombarded" by voices and unable to discuss them in any "rational fashion." *Id.* at 348. Absent treatment, "Mr. Reid will more than likely never be able to cooperate with his counsel to assist with his legal proceedings." *Id.* at 1607. According to Dr. Cort, it is "difficult . . . to say" whether Reid would be competent if he both participated in therapy and took medication. *Id.* at 348; *see also id.* at 348–49 ("That would be . . . the best chance for him to be competent.").

The IJ found Dr. Cort to be "generally credible." *Id.* at 249. DHS did not challenge Dr. Cort's qualifications or offer opposing expert or fact testimony.

At the end of the *M-A-M-* hearing, the IJ reserved "formal" decision and made no "clear finding" but suggested "there are appropriate safeguards" and

expressed "certainly enough concern" that she "should be implementing [them] at this time." *Id.* at 363. The IJ stated that she likely would implement identical safeguards "whether [she] find[s] competency or not." *Id.*

### C. The Competency "Finding"

The following month, the IJ orally issued "sort of a formal finding" that she was "concerned about [Reid's] competency as it pertains to the attorney-client relationship" but said she would "find[] ways to . . . work around that." *Id.* at 383. She reiterated that "the safeguards would be the same" regardless of her finding. *Id.* at 382. When asked whether she was finding Reid incompetent, the IJ responded, "I'm not going to make a formal finding[] as to overall competency because . . . I don't know that there needs to be [one]," but she also acknowledged that "there's incompeten[cy] as it pertains to the client-attorney working relationship." *Id.* at 384; *see also id.* ("I mean, I don't know if there's an overall incompeten[cy], but I think that there—in terms of like how he interacts with you. I don't think he's—I don't think you have a competent—I don't know the right word."). The IJ stated that Reid's counsel "can[not] establish an attorney-client relationship that [she] would need in order to fully present the case." *Id.* Beyond this statement about the attorney-client relationship, however, the IJ did not consider the character, scope, and severity of Reid's incompetency to proceed without safeguards. Nor did the IJ articulate how and why the safeguards she was considering could "work around" Reid's mental illness. *Id.* at 383.

### D. The Individual Hearing

At Reid's individual hearing on November 22, 2019,[8] the IJ implemented safeguards by "rel[ying] on the objective evidence in the record," "not requir[ing] Reid] to testify for his relief applications," having Reid's counsel "present[] witnesses and affidavits on his behalf," purportedly "allowing [Reid] to be unshackled during the hearing," and "not wear[ing] her robe because of [Reid's]

---

[8] "Evidentiary hearings on contested matters are referred to as individual calendar hearings or merits hearings. Contested matters include challenges to removability and applications for relief." Exec. Off. of Immigr. Rev., U.S. Dep't of Just., Immigration Court Practice Manual § 4.16(a) (2023).

distrust of the judicial system." Special App'x at 18.[9] Notably, the IJ neglected to address Reid's primary request for the safeguard of termination. *See Matter of M-J-K-*, 26 I. & N. Dec. 773, 777 & n.4 (B.I.A. 2016) (recognizing termination without prejudice as an appropriate safeguard in certain circumstances).

Reid's social worker, Alexis Donovan, also testified orally. The IJ found Ms. Donovan to be "generally credible." CAR at 249. Ms. Donovan testified that Reid's attitude toward treatment of his schizophrenia was changing and that Reid "confirmed . . . that he's interested in seeking treatment upon release, if given the opportunity to do so." *Id*. at 420. Even so, Reid remained averse to treatment through medication. But Ms. Donovan testified that Reid's "understanding of his illness is expanding," and she could not "say that it will not continue to expand to the point that he will decide to . . . take medication one day." *Id.* at 431.

### E. The IJ Decision

In a decision issued on January 31, 2020, the IJ denied Reid's applications for section 212(c) relief, for adjustment of status, and for deferral of removal under the CAT and directed Reid's removal to Jamaica. The IJ acknowledged that, at his individual hearing, Reid "could not assist his representative" in his defense, but nonetheless concluded that "the court ensured his due process by implementing adequate safeguards." Special App'x at 18. Beyond this conclusory assertion that the safeguards implemented were adequate to protect Reid's rights, the IJ provided no explanation of the adequacy of those safeguards—and gave no consideration to the character, scope, and severity of Reid's disabilities that might constitute incompetency.

---

[9] The Attorney General argues that the IJ implemented a safeguard of "fully credit[ing] the testimony of Dr. Cort, Ms. Donovan, and the declarations of Reid's mother, his fiancée, and [Reid's] country conditions expert." Br. for Resp't at 24. But the IJ credited these witnesses' oral and written testimony because it was credible, not as a safeguard. *See* Special App'x at 17 ("Based on their responsiveness and consistency, the court finds the testimonies of Dr. Cort and Ms. Donovan to be generally credible. Additionally, it finds that the respondent's mother and fiancé[e] along with the purported country conditions expert . . . would testify credibly and consistently with their written statements.").

On the merits, the IJ found Reid ineligible for section 212(c) relief because he "failed to establish" a condition of eligibility "that he did not serve an aggregate [prison] term of more than five years as a result of one or more aggravated felonies." *Id.* at 19. "[G]iven [Reid's] mental health issues, the age of the convictions and lack of proper records," Reid could offer only that he had served between 1,608 and 1,835 days, the higher number being eleven days above the ineligibility threshold for section 212(c) relief.[10] *Id.* The IJ recognized due process concerns with her eligibility finding but found no prejudice because she alternatively resolved to deny Reid section 212(c) relief on discretionary grounds.

In denying Reid section 212(c) relief on discretionary grounds, the IJ determined that "[b]ased on [Reid's] serious and lengthy criminal record . . . , he needs to provide additional offsetting favorable evidence involving 'unusual' or 'outstanding' equities." *Id.* at 20 (citations omitted). The IJ then found that Reid had, in fact, "established the existence of unusual equities," which were "compound[ed by] . . . additional positive factors," but ultimately determined that "they d[id] not outweigh the extensive adverse factors in the record." *Id.* at 21.

Finally, the IJ denied deferral of removal under the CAT because Reid had established neither "that it is more likely than not he will be subjected to torture [by Jamaican authorities] . . . based on his status as a mentally ill and homeless deportee," *id.* at 22, nor "a specific intent on the part of the Jamaican authorities to inflict severe pain or suffering . . . for any harm to [meet the definition of] torture." *Id.* at 23.

### III.    Proceedings Before the BIA

The BIA affirmed the IJ's decision. The BIA acknowledged that the IJ failed to make a "complete competency determination," but nevertheless concluded that the IJ implemented safeguards "sufficient to ensure that the respondent received

---

[10] "[I]n light of the attorney-client issue" preventing Reid from assisting in his own defense on this factual issue, the IJ previously had held the record open pending resolution of a records request in the hope that it would contain "a printout . . . or some kind of calculation" that would resolve Reid's eligibility. CAR at 458. The records request provided an inconclusive history that supported only a potential range of Reid's time served.

a full and fair hearing." *Id*. at 3–4. It reasoned that these safeguards "were the safeguards requested by [Reid]" and he identified no other safeguards that the IJ "should have implemented but did not." *Id.* at 4–5.

On the merits, the BIA affirmed the IJ's denial of section 212(c) relief on discretionary grounds but not the IJ's ruling that Reid had failed to establish his statutory eligibility for such relief. The BIA agreed that Reid's equities in favor of discretionary relief were "unusual" but concluded that they "do not offset the adverse factor of [his] lengthy and serious criminal history." *Id.* at 6. It then affirmed the IJ's denial of deferral of removal under the CAT.

Finally, the BIA denied a motion to remand in light of new evidence that Reid had started taking psychiatric medication. The BIA concluded that Reid failed to demonstrate that this evidence was material or likely to change any determination by the IJ because Reid had only been taking the medication for a few days before the motion was filed.

## STANDARD OF REVIEW

Where, as here, the BIA affirms the IJ's decision but rejects or does not reach one of the IJ's alternative bases for denying relief, we review the IJ's decision as modified by the BIA. *Wei Sun v. Sessions*, 883 F.3d 23, 27 (2d Cir. 2018). That is, we do not review the alternative basis that the BIA did not adopt. *Xue Hong Yang v. U.S. Dep't of Just.*, 426 F.3d 520, 522 (2d Cir. 2005).

We review factual findings under the "substantial evidence" standard, "which requires that they be supported by 'reasonable, substantial and probative evidence in the record when considered as a whole.'" *Kone v. Holder*, 596 F.3d 141, 146 (2d Cir. 2010) (quoting *Iouri v. Ashcroft*, 487 F.3d 76, 81 (2d Cir. 2007)); *see Su Chun Hu v. Holder*, 579 F.3d 155, 158 (2d Cir. 2009) (per curiam). Although we treat factual findings as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B), we do not "defer to unreasoned rulings, or those based on legal error, faulty analysis, or misreadings of the record," *Dong Gao v. BIA*, 482 F.3d 122, 127 (2d Cir. 2007) (quoting *Li Zu Guan v. INS*, 453 F.3d 129, 136 (2d Cir. 2006)). "We review all

questions of law, including the application of law to facts, *de novo*." *Ojo v. Garland*, 25 F.4th 152, 159 (2d Cir. 2022). And "[w]hen the BIA or IJ has failed to apply the law correctly, 'we retain substantial authority to vacate BIA or IJ decisions and remand for reconsideration or rehearing.'" *Beskovic v. Gonzales*, 467 F.3d 223, 225 (2d Cir. 2006) (quoting *Ivanishvili v. U.S. Dep't of Just.*, 433 F.3d 332, 337 (2d Cir. 2006)); *see also Ojo*, 25 F.4th at 168 ("[An] agency's failure to follow its own precedent . . . requires remand . . . .").

## DISCUSSION

### I. Constitutional and Statutory Rights of Incompetent Noncitizens in Removal Proceedings

A noncitizen "is entitled to a full and fair removal hearing under both the [INA] and the Due Process Clause of the Fifth Amendment." *Matter of R-C-R-*, 28 I. & N. Dec. 74, 77 (B.I.A. 2020). Under the Fifth Amendment, a noncitizen is "entitle[d] . . . to due process of law in deportation proceedings," *Reno v. Flores*, 507 U.S. 292, 306 (1993), which includes the right to a full and fair hearing, *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982). Similarly, the INA guarantees noncitizens "a reasonable opportunity to examine the evidence against [them], to present evidence on [their] own behalf, and to cross-examine witnesses presented by the Government." 8 U.S.C. § 1229a(b)(4)(B).

While the BIA has drawn on general due process principles from criminal proceedings to develop its incompetency precedent, "[u]nlike in criminal proceedings, a lack of competency in civil immigration proceedings does not mean that the hearing cannot go forward; rather, procedural fairness is required." *Matter of M-A-M-*, 25 I. & N. Dec. at 479. In that vein, the INA requires that "[i]f it is impracticable by reason of an alien's mental incompetency for the alien to be present at the proceeding, the Attorney General shall prescribe safeguards to protect the rights and privileges of the alien." 8 U.S.C. § 1229a(b)(3). Though several regulations describe potential safeguards, *see, e.g.*, 8 C.F.R. §§ 103.8(c)(2)(ii), 1240.4, 1240.10(c) (2024), the INA and its implementing regulations do not specify how to determine competency or how proceedings may go forward against incompetent noncitizens who are able to appear in person, *see*

13

*Calderon-Rodriguez v. Sessions*, 878 F.3d 1179, 1182 (9th Cir. 2018). In *Matter of M-A-M-*, the BIA "filled in some of the gaps in the INA" by "[d]rawing on the general due process principles for assuring competence in criminal proceedings . . . as well as on INA-provided rights to be represented and present evidence." *Id.*

Finally, "the Attorney General's discretionary judgment whether to grant relief . . . shall be conclusive unless manifestly contrary to the law and an abuse of discretion." 8 U.S.C. § 1252(b)(4)(D).

## A. *Matter of M-A-M-* and Its Progeny Establish a Rigorous Procedural Framework

In *Matter of M-A-M-*, the BIA set forth a test for competency to "meet traditional standards of fundamental fairness in determining whether an alien is competent to participate in immigration proceedings," 25 I. & N. Dec. at 479, and "provide[d] a framework for analyzing cases in which issues of mental competency are raised," *id.* at 476. The framework imposed "rigorous procedural requirements," *Mejia v. Sessions*, 868 F.3d 1118, 1122 (9th Cir. 2017), which the BIA supplemented in subsequent decisions. *See, e.g.*, *Matter of E-S-I-*, 26 I. & N. Dec. 136 (B.I.A. 2013); *Matter of J-R-R-A-*, 26 I. & N. Dec. 609 (B.I.A. 2015); *Matter of J-S-S-*, 26 I. & N. Dec. 679 (B.I.A. 2015); *Matter of M-J-K-*, 26 I. & N. Dec. 773.

### 1. The Test for Competency

A respondent is competent to participate in immigration proceedings if he or she (1) "has a rational and factual understanding of the nature and object of the proceedings," (2) "can consult with the attorney or representative if there is one," and (3) "has a reasonable opportunity to examine and present evidence and cross-examine witnesses." *Matter of M-A-M-*, 25 I. & N. Dec. at 479.

### 2. The Framework for Assessing Competency and Protecting Incompetent Respondents' Rights and Privileges

A respondent is "presumed to be competent to participate in removal proceedings," and "[a]bsent indicia of mental incompetency," an IJ is not obligated to analyze the respondent's competency. *Id.* at 477; *see also id.* at 484 ("[I]f there are

14

no indicia of incompetency in an alien's case, no further inquiry regarding competency is required."). However, "[i]f there are indicia of incompetency," the IJ "must make further inquiry to determine whether the alien is competent for purposes of immigration proceedings." *Id.* at 484.

The IJ "must weigh the results" of her inquiry and "determine, under the test for competency . . . , whether the respondent is sufficiently competent to proceed with the hearing without safeguards." *Id.* at 481. She "must also articulate that determination and . . . her reasoning." *Id.* "[N]either party bears a formal burden of proof in immigration proceedings to establish whether or not the respondent is mentally competent," but the IJ must make her determinations based upon a "preponderance of the evidence." *Matter of J-S-S-*, 26 I. & N. Dec. at 683.[11]

If the IJ determines that the respondent lacks sufficient competency to proceed in the absence of safeguards, she must "evaluate and apply appropriate safeguards" and, again, "articulate the rationale for . . . her decision." *Matter of M-A-M-*, 25 I. & N. Dec. at 484. "[R]emoval proceedings can continue despite a respondent's lack of competency, so long as safeguards are in place to ensure that the respondent's rights and privileges . . . are protected." *Matter of J-S-S-*, 26 I. & N. Dec. at 681; *see also Matter of M-A-M-*, 25 I. & N. Dec. at 477 ("[P]roceedings can go forward, even where the alien is incompetent, *provided* the proceeding is conducted fairly." (emphasis added)).

The IJ has "discretion to determine which safeguards are appropriate under the circumstances of a particular case." *Matter of M-J-K-*, 26 I. & N. Dec. at 775–76. BIA precedent offers a number of potential safeguards, including, but not limited to:

- "apply[ing] the safeguard of legal representation" to "increase[] the likelihood of finding a means to proceed fairly," *id.* at 777;

---

[11] The respondent, DHS, and the IJ should work "collaborative[ly] . . . to fully develop the record." *Matter of J-S-S-*, 26 I. & N. Dec. at 682. "DHS is obligated to provide the Immigration Judge with materials relevant to the respondent's mental competency that are in its possession." *Id.*

- "participation of a guardian in the proceedings," *Matter of M-A-M-*, 25 I. & N. Dec. at 483;

- "identification and appearance of a family member or close friend who can assist the respondent and provide the court with information," *id.*;

- "refusal to accept an admission of removability from an unrepresented respondent," *id.*;

- "docketing or managing the case to facilitate the respondent's ability to obtain . . . medical treatment in an effort to restore competency," *id.*;

- "continuance of the case for good cause shown," *id.*;

- "closing the hearing to the public," *id.*;

- "waiving the respondent's appearance," *id.*;

- "re-serving the notice to appear" if "a competency issue . . . surface[s] after proceedings [a]re underway," *Matter of M-J-K-*, 26 I. & N. Dec. at 776; *see also Matter of E-S-I-*, 26 I. & N. Dec. at 144–45;

- "actively aiding in the development of the record, including the examination and cross-examination of witnesses," *Matter of M-A-M-*, 25 I. & N. Dec. at 483;

- "[]assess[ing] . . . factual findings" in light of "competency issues [that] relate to the respondent's ability to provide reliable testimony," *Matter of J-R-R-A-*, 26 I. & N. Dec. at 612;

- deeming satisfied certain "issues . . . involved in the adjudication of" a respondent's claims and "proceed[ing] to the other requirements for the relief sought," *id.* at 612 n.1;

- "reserving appeal rights for the respondent," *Matter of M-A-M-*, 25 I. & N. Dec. at 483;

- "pursu[ing] alternatives with the parties, such as administrative closure, while other options are explored, such as seeking treatment for the respondent," *id*; and

16

- "terminat[ing] the respondent's proceedings without prejudice" as to the government's right to reopen, *Matter of M-J-K-*, 26 I. & N. Dec. at 774. [12]

### B. Safeguards Must Address the Character, Scope, and Severity of a Respondent's Incompetency to Proceed Without Any Safeguards

The INA's requirement that the Attorney General "prescribe safeguards," 8 U.S.C. § 1229a(b)(3), and Congress's provision for judicial review implicitly require that an IJ explain the adequacy of the safeguards implemented with reference to the character, scope, and severity of the noncitizen's disabilities. Without such an explanation, a reviewing court cannot reach a conclusion as to whether the implemented safeguards were adequate. Because incompetency can take on many different forms, the safeguards needed to protect the rights of incompetent noncitizens may also take many different forms—and will depend on the character, scope, and severity of the disabilities resulting in the incompetency to proceed without safeguards. *See Matter of J-S-S-*, 26 I. & N. Dec. at 683–84 ("[A]n independent competency determination . . . assists in bringing competency issues to the fore and identifying appropriate safeguards . . . ."); *Matter of M-A-M-*, 25 I. & N. Dec. at 483 ("[T]o decide which . . . safeguards to utilize," an IJ must "consider the facts and circumstances of an alien's case . . . .").

Our conclusion that the safeguards must address the character, scope, and severity of a respondent's incompetency to proceed without any safeguards is founded upon the INA's instruction that the Attorney General "prescribe

---

[12] "Administrative closure is 'a docket management tool that is used to temporarily pause removal proceedings.'" *Matter of Cruz-Valdez*, 28 I. & N. Dec. 326, 326 (A.G. 2021) (quoting *Matter of W-Y-U-*, 27 I. & N. Dec. 17, 18 (B.I.A. 2017)). "It does not terminate or dismiss the case, but rather 'remove[s] a case from an Immigration Judge's active calendar or from the Board's docket.'" *Id.* (alteration in original) (quoting *Matter of Avetisyan*, 25 I. & N. Dec. 688, 692 (B.I.A. 2012)); *see also Matter of Amico*, 19 I. & N. Dec. 652, 654 n.1 (B.I.A. 1988) ("The administrative closing of a case does not result in a final order. It is merely an administrative convenience which allows the removal of cases from the calendar in appropriate situations."). By contrast, termination of proceedings is a process established by regulation that requires DHS "to file another charging document to initiate new proceedings." *Matter of Avetisyan*, 25 I. & N. Dec. at 695.

safeguards to protect the rights and privileges of the alien." 8 U.S.C. § 1229a(b)(3). It follows that if safeguards are needed to "protect the rights and privileges of the alien," they must be fashioned in a manner responsive to the character, scope, and severity of the noncitizen's incompetency to proceed absent safeguards. In other words, the chosen safeguards must be adequate given the noncitizen's particular circumstances. *See Matter of M-A-M-*, 25 I. & N. Dec. at 481–82 (requiring that IJs "determine which safeguards are appropriate, given the particular circumstances in a case before them"); *Matter of J-R-R-A-*, 26 I. & N. Dec. at 612 (concluding that incompetency and safeguards "need to be assessed on a case-by-case basis"); *Matter of M-J-K-*, 26 I. & N. Dec. at 776 (noting that an IJ's "ultimate determination of which safeguards to implement" requires analysis of "whether they are adequate to ensure the fairness of proceedings"). Otherwise, "[t]o order the removal of someone unable to participate meaningfully in his or her removal proceedings [without adequate safeguards] would make the whole process a charade." *Diop v. Lynch*, 807 F.3d 70, 76 n.1 (4th Cir. 2015).

Following an order of removal, a noncitizen may challenge the adequacy of the chosen safeguards before the BIA and thereafter petition a Court of Appeals for review. On such review, the reviewing court cannot blindly accept an IJ's conclusory assertion that the safeguards were "adequate." *See Matter of M-A-M-*, 25 I. & N. Dec. at 483 (requiring that the IJ "articulate . . . her reasoning for the decision" of "which . . . safeguards to utilize"); *see also Mejia*, 868 F.3d at 1122 (holding that an IJ must "articulate his assessment of Petitioner's competence and why these procedural safeguards were adequate"). Rather, the court must be permitted to "meaningful[ly] . . . review" whether they were so. *Beskovic*, 467 F.3d at 227; *see Matter of M-J-K-*, 26 I. & N. Dec. at 774 (explaining that in some situations, the reviewing court may determine that the hearing process safeguards adopted by the IJ were "insufficient to ensure fairness in the proceedings"). Without reference to the character, scope, and severity of the incompetency to proceed absent safeguards, a court is stymied in its ability to evaluate the adequacy of the chosen safeguards.

In addition, an IJ may exercise her discretion in fashioning relief, as "the ultimate determination of which safeguards to implement and whether they are

adequate to ensure the fairness of proceedings is discretionary." *Matter of M-J-K*, 26 I. & N. Dec. at 776. When incompetency is expected to be fleeting, for example, a continuance may be a safeguard that can appropriately protect the noncitizen's rights. *See Matter of M-A-M-*, 25 I. & N. Dec. at 481 ("Immigration Judges can continue proceedings to allow for further evaluation of competency or an assessment of changes in the respondent's condition."). When there is evidence that the incompetency might plausibly be ameliorated with future treatment, or a likelihood that the disadvantages of the person's incompetency might be lessened in the not-too-distant future by, for example, the arrival of a family member who could testify to facts that might be helpful to the noncitizen's case, delay through administrative closure or termination of proceedings without prejudice to await the expected event could be a desirable safeguard.[13] *Id.* at 483; *see also Matter of M-J-K-*, 26 I. & N. Dec. at 773, 778 (directing IJ to consider whether "unexplored safeguards may allow the proceedings to move forward" and "evaluate whether [administrative closure] could serve a purpose in this unique context").

---

[13] Reid was detained through the pendency of the removal proceedings now on appeal—approximately two years—so we take the occasion to note that an incompetent respondent's detention may be an important factor in fashioning relief. For many respondents, the practical difference between administrative closure and termination of proceedings will be slim, as both halt DHS's removal efforts without prejudice to DHS reinitiating or reopening proceedings. *See Matter of Avetisyan*, 25 I. & N. Dec. at 695. But for detained respondents, administrative closure could result in indefinite and inescapable detention. *See Velasco Lopez v. Decker*, 978 F.3d 842, 852 (2d. Cir. 2020) ("Absent release on bond, detention lasts through the initial removal determination proceedings . . . and all inter-agency and federal court appeals, even where an individual has prevailed and the Government appeals."). In fashioning relief, IJs must avoid unconstitutional, Kafkaesque scenarios in which respondents' proceedings are administratively closed due to incompetency but respondents remain detained for extensive periods of time pending recovery. "[N]oncitizens . . . cannot be detained indefinitely." *Id.* at 855 n.13. Administrative closure may be inappropriate relief for respondents likely to face prolonged detention following such closure. We note, however, that BIA precedent is quite clear that "Immigration Judges should be particularly reluctant to terminate proceedings where . . . the alien has a history of serious criminal conduct and may pose a danger to himself or others upon his release into the community." *Matter of M-J-K-*, 26 I. & N. Dec. at 777 n.4.

## II.    The IJ's Application of the *Matter of M-A-M-* Framework to Reid's Case

The IJ improperly applied the *Matter of M-A-M-* framework. Faced with substantial evidence of disabilities supporting the possibility that Reid was incompetent to continue without safeguards, the IJ did implement a number of safeguards. But the BIA erred in accepting her conclusory assertion, without supporting discussion, that the adopted safeguards were adequate. The record provides no support for that conclusion; it may well have been that additional safeguards to protect Reid's rights and privileges should have been considered. For our purposes, because the IJ gave no consideration to the character, scope, and severity of Reid's disabilities, she deprived a reviewing court of the ability to assess the adequacy of the chosen safeguards.

### A.    The IJ Properly Recognized Indicia of Incompetency, But Failed to Consider the Character, Scope, and Nature of Reid's Competency to Proceed Without Safeguards

In Reid's case, the IJ properly recognized indicia of incompetency, triggering her obligation to "make further inquiry to determine whether [Reid] is competent for purposes of immigration proceedings." *Matter of M-A-M-*, 25 I. & N. Dec. at 484.[14] Thus, the presumption of competency was rebutted, and the IJ was required to "weigh the results from the measures taken" to assess Reid's competency, "determine, under the test for competency," whether Reid was "sufficiently competent to proceed with the hearing without safeguards," and "articulate that determination and . . . her reasoning." *Id.* at 481.

---

[14] In Reid's case, the IJ recognized indicia of incompetency and scheduled a *Matter of M-A-M-* hearing after Reid's attorney affirmatively raised the issue. *See* CAR at 321–23. We note, however, that the substantive obligations *Matter of M-A-M-* imposes extend beyond contexts where a counseled respondent's attorney affirmatively raises the issue of incompetency. *Matter of M-A-M-* notes that "[i]ndicia of incompetency include a wide variety of observations and evidence" and that "the Immigration Judge or the parties may observe certain behaviors by the respondent" or "the record may contain evidence of . . . incompetency" that should trigger further inquiry. 25 I & N. Dec. at 479.

20

The IJ did take certain proper measures in furtherance of determining whether Reid was competent to proceed with removal proceedings without safeguards. The IJ stated that she was "concerned about [Reid's] competency as it pertains to the attorney-client relationship," expressed a belief that Reid's counsel "can[not] establish an attorney-client relationship that [she] would need in order to fully present the case," and indicated that she did not "think he's . . . competent," but "d[id not] know the right word." CAR at 383–84. That is, Reid "could not meaningfully assist his attorney." Special App'x at 15. However, beyond the finding as to the attorney-client relationship, the IJ failed to consider the character, scope, and severity of any incompetency to proceed. And though the BIA acknowledged that the IJ failed to make a "complete competency determination," CAR at 3, it did not remand.

Without sufficient consideration of the character, scope, and severity of any incompetency, we possess "insufficient [information] to permit meaningful [appellate] review" of the question of whether the safeguards the IJ implemented were adequate to protect Reid's rights and privileges. *Beskovic*, 467 F.3d at 227.

## B. Reid Is Not Required to Demonstrate Prejudice

"[W]hen a regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute, and the [agency] fails to adhere to it, the challenged deportation proceeding is invalid and a remand to the agency is required." *Waldron v. INS*, 17 F.3d 511, 518 (2d Cir. 1993). Where, as here, a respondent claims that an agency "has failed to adhere to its own regulations regarding [a fundamental right derived from the Constitution or a federal statute] in a deportation hearing," he is "not required to make a showing of prejudice before he is entitled to relief." *See Montilla v. INS*, 926 F.2d 162, 169 (2d Cir. 1991). "[T]o warrant remand, all a petitioner" like Reid "need show is that 'the subject regulations were for the alien's benefit and that the [agency] failed to adhere to them.'" *Picca v. Mukasey*, 512 F.3d 75, 78–79 (2d Cir. 2008) (quoting *Montilla*, 926 F.2d at 169); *see also United States v. Fernandez-Antonia*, 278 F.3d 150, 157 (2d Cir. 2002) ("An alien is entitled to a new deportation hearing whenever he shows on direct appeal that 'a regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute, and the [agency] fails to adhere

21

to it.' . . . No showing of prejudice to the alien is required." (quoting *Waldron*, 17 F.3d at 518)).

### C. On Remand, the IJ Must Either Explain the Adequacy of the Safeguards That Were Implemented in Light of the Character, Scope, and Severity of Reid's Disabilities, or Reevaluate Reid's Present Competency and Consider What Safeguards May Be Appropriate

We remand because we cannot affirm on this record that Reid received a full and fair hearing, as guaranteed by the INA and the Due Process Clause. The deficiency lies in the IJ's failure to make a record that would permit a reviewing court to assess whether the safeguards implemented were adequate in light of Reid's disabilities, as required by the INA and *Matter of M-A-M-*.

On remand, the IJ must assess the character, scope, and severity of Reid's disabilities as they were at the time of Reid's hearing and explain the adequacy of the selected safeguards in light of those findings. In the event that the IJ does not find that the previously implemented safeguards were adequate in light of the character, scope, and severity of Reid's disabilities at the time, the IJ should undertake a new evaluation of Reid's present competency to proceed without safeguards and decide whether to implement safeguards. We acknowledge, too, that over four years have passed since Reid's *Matter of M-A-M-* hearing—and 30 years since the commencement of these removal proceedings. *See Diop*, 807 F.3d at 76 ("While past mental history can certainly bear on competency, it is by no means dispositive."); *id.* ("[A] single snapshot of mental health concerns taken ten months earlier can hardly represent [his] state of mind when he arrived in immigration court."). Therefore, on remand, the agency may instead wish, in the first instance, to proceed directly to reevaluating Reid's current competency to proceed without safeguards. *See Matter of J-S-S-*, 26 I. & N. Dec. at 685 ("[M]ental competency is not a static condition.").

In either case, if the agency reevaluates Reid's incompetency to proceed without safeguards anew, consistent with the *Matter of M-A-M-* framework, it must do so in a manner that permits meaningful appellate review. This means that

22

if safeguards are once again implemented, the IJ must explain their adequacy to protect Reid's rights in light of the character, scope, and severity of his disabilities or his incompetency.[15] The agency is reminded that the full range of available safeguards in light of the character, scope, and severity of a noncitizen's incompetency includes, in the agency's discretion, administrative closure or termination of proceedings, either for a limited duration or without prejudice as to the government's right to reopen or reinitiate proceedings.[16]

---

[15] Incompetency is not a "static" condition, and an IJ is ordinarily under a continuing obligation to assess a respondent's competency. *Matter of M-A-M-*, 25 I. & N. Dec. at 480; *see also id.* ("'[Incompetency] varies in degree. It can vary over time. It interferes with an individual's functioning at different times in different ways.' As a result, . . . throughout the course of proceedings[, the IJ needs] to determine whether an alien's condition has deteriorated or, on the other hand, whether competency has been restored." (quoting *Indiana v. Edwards*, 554 U.S. 164, 175 (2008))). Although Dr. Cort expressed a belief that Reid likely never would be able to cooperate with his attorney, both she and Ms. Donovan acknowledged a possibility that Reid could regain competency. Dr. Cort asserted that it is "difficult . . . to say" whether Reid could become competent if he participated in therapy and took medication, CAR at 348; *see also id.* at 348–49 ("That would be . . . the best chance for him to be competent."), but that "[w]ithout consistent mental health treatment," Reid "more than likely never" will regain competency under the *Matter of M-A-M-* test, *id.* at 1607; *see also supra*, p. 14 (explaining the competency test under *Matter of M-A-M-*). Dr. Cort expressed "some hope and promise" that her connection with Reid suggested the "possibility of [him] maybe being more amenable to treatment," CAR at 349, and Ms. Donovan testified that Reid now "feel[s] that treatment or talking with somebody on a regular basis has helped him, and that he wants to continue," but he remains averse to taking medication, *id.* at 421. *But see id.* at 349 ("[W]ithout the medication, . . . he could never be [competent].")*; id.* at 348 (noting that Reid will continue to be "bombarded" by voices and unable to discuss them in "a more rational fashion" unless he takes medication).

[16] On remand, there are no barriers to administrative closure or termination of proceedings. Prior Attorney General opinions holding that IJs lack inherent authority to administratively close or terminate proceedings have been recently overruled. *See Matter of Cruz-Valdez*, 28 I. & N. Dec. at 326 ("I . . . overrule Attorney General Sessions's opinion in *Matter of Castro-Tum*, which concluded that the immigration courts' use of the tool of administrative closure was not authorized." (citing *Matter of Castro-Tum*, 27 I. & N. Dec. 271 (A.G. 2018))); *see also Matter of Coronado Acevedo*, 28 I. & N. Dec. 648, 649–50 (A.G. 2022) ("Th[e] conclusion [in *Matter of S-O-G- & F-D-B-*, 27 I. & N. Dec. 462 (A.G. 2018), that IJs lack inherent authority to terminate proceedings] relied

Because we cannot determine on the basis of the deficient record before us whether Reid was afforded a full and fair hearing, we vacate and remand for proceedings consistent with this opinion. We do not reach Reid's arguments challenging the agency's denials of his claims for section 212(c) relief, adjustment of status, or protection under the CAT. The agency shall either explain the adequacy of the safeguards adopted in light of the character, scope, and severity of his disabilities at the time of his hearing, or reevaluate Reid's competency at the time of a new competency hearing it accords Reid, along with the merits of his claims for relief.

## CONCLUSION

For the foregoing reasons, we **GRANT** Reid's petition for review, **VACATE** the BIA's decision, and **REMAND** for further proceedings consistent with this opinion.

---

heavily upon Attorney General Sessions's prior opinion in *Matter of Castro-Tum* . . . . I have now determined that *S-O-G- & F-D-B-* should be overruled.").

We recently held in *Garcia v. Garland* that "[a]n agency has not abused its discretion when it relied on an agency interpretation—such as the BIA's reliance on *Matter of Castro-Tum*—that was valid and applicable at the time the agency rendered its decision." 64 F.4th 62, 69 (2d Cir. 2023). Here, the agency did not rely on *Matter of Castro-Tum* or *Matter of S-O-G- & F-D-B-* in denying Reid's motion to terminate proceedings. Rather, it denied the motion upon determining that adequate safeguards could protect Reid's rights and privileges. Thus, *Garcia* has no application here.